# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BARKSDALE SCHOOL PORTRAITS, LLC D/B/A HOCKMEYER WITH BARKSDALE, | : | |
| Plaintiff, | : | |
| vs. | : | Civil Action No. |
| ELIZABETH HOCKMEYER WILLIAMS | : | |
| and | : | |
| E-LLUMINATIONS, | : | |
| Defendants. | : | |

## <u>COMPLAINT</u>

The individual defendant, Elizabeth Hockmeyer Williams ("Williams"), used her management position and email address and network at Barksdale School Portraits, LLC d/b/a Hockmeyer with Barksdale ("Hockmeyer with Barksdale") to (1) contact the company's New England clients and disparage the firm, while promoting her own future business; (2) steal the firm's clients, confidential information, equipment, intellectual property and good will; and (3) destroy the firm's computer data and electronically stored information. All the while, she was setting up a competitor, defendant E-lluminations, and taking deceptive steps to destroy Hockmeyer with Barksdale's property and the evidence of her wrongful conduct, including deleting her Hockmeyer with Barksdale email accounts and electronic data from the company's computers and electronic storage devices. Hockmeyer with Barksdale now seeks injunctive

relief against the defendants and recovery of all damages, lost profits and costs incurred due to the defendants' wrongful conduct.

## PARTIES

1.      Plaintiff, Barksdale School Portraits, LLC d/b/a Hockmeyer with Barksdale, is a Pennsylvania corporation with its principal place of business at 380 Turner Industrial Way, Aston, PA 19014.  It is therefore a citizen of the Commonwealth of Pennsylvania.

2.      Defendant Elizabeth Hockmeyer Williams resides at 321 Fern Avenue, Amesbury, MA 01913, and is a citizen of the Commonwealth of Massachusetts.

3.      Upon information and belief, Defendant E-lluminations is a Massachusetts corporation or the d/b/a of a Massachusetts corporation with a principal place of business at 321 Fern Avenue, Amesbury, MA 01913.  It is therefore a citizen of the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter at issue exceeds the sum of $75,000, exclusive of interest and costs, and is between the citizens of different states.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it raises claims under federal law, including the Stored Communications Act, 18 U.S.C. § 2701 et seq.

6.      This Court has supplemental jurisdiction over the state law claims herein, which arise from the same common nucleus of operative facts from which the federal claim arises pursuant to 28 U.S.C. § 1367.

2435844_1

7.     This Court has personal jurisdiction over the defendants as both defendants are residents and citizens of the Commonwealth of Massachusetts and because the acts complained of and giving rise to the claims occurred in this District.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

9.     Plaintiff Hockmeyer with Barksdale operates a photography business specializing in school portraits, commencement photos, yearbook publishing and other school-related photography, portraiture and publishing.

10.     Hockmeyer with Barksdale provides its services throughout New England, including Maine, Vermont, New Hampshire, Massachusetts, Rhode Island, and Connecticut.

11.     Williams previously worked as the Chief Operations Officer of a predecessor entity, Hockmeyer Studios, which Barksdale School Portraits acquired in 2018 through an asset purchase agreement ("Asset Purchase Agreement") with Williams' parents, who owned Hockmeyer Studios.

12.     Hockmeyer with Barksdale retained Williams as the company's New England territory manager, responsible for the operation, planning, growth, and sales for the region.

13.     Williams had contact with and served more than 320 clients of Hockmeyer with Barksdale throughout the New England territory.

14.     In her position, Williams was charged with directing, implementing and meeting growth and sales goals for the company, acting as a liaison between the company and its clients, managing and mentoring employees, and handling human resources, employee recruitment and

3

retention, among other tasks.

15.     Despite these obligations, Williams began to undermine Hockmeyer with Barksdale during her employment, and solicit business away from the company, in violation of her duty of loyalty.

16.     From late 2019 through early 2020, Williams began neglecting her duties and customers at Hockmeyer with Barksdale, failing to return calls and emails from customers, not attending important sales and customer meetings, and generally and intentionally undermining the relationship between Hockmeyer with Barksdale and its customers and employees.

17.     Also, on information and belief, Williams used her Hockmeyer with Barksdale cell phone, cell phone number, computer and work emails to solicit customers and vendors, and compete with Hockmeyer with Barksdale prior to her ending her employment with the plaintiff company.

18.     Williams also behaved coarsely and unprofessionally, yelling at a manager that "My parents told me I should give you the bird!"

19.     Also during her employment Williams undermined the company's relationships with employees and admitted her plan to set up a rival company.  Williams informed underlings at Hockmeyer with Barksdale that her family had a meeting about starting her own business, and her parents had approved and supported her plans.

20.     Williams also requested that Hockmeyer with Barksdale terminate her employment, and repeatedly and falsely alleged that she had been fired, when she had not.  The company did place all employees on a temporary furlough in the initial weeks of the COVID-19 pandemic, as schools closed down and cancelled all gatherings in which photographs could be

4

taken, but her manager repeatedly informed her that payroll funding had been secured, she would be reinstated in the near future, and that everything would be fine.

21.    Hockmeyer with Barksdale later discovered that Williams' conduct was a premeditated plan and set-up to steal the company's customers, intellectual property, good will and employees, and destroy the company's electronically stored information.

22.    In April of 2019, while still an employee of Hockmeyer with Barksdale, Williams set up a Facebook page to market her competing business, E-lluminations.  On information and belief, Williams incorporated her business, E-lluminations, around this time. Currently, Williams operates a website at https://www.e-lluminations.com with an Amesbury, Massachusetts P.O. Box and an email identified as elizabeth@e-lluminations.com.

23.    On May 12, 2020, Williams sent the following communication to all school customers and potential customers of Hockmeyer with Barksdale in her territory from her work email address at Hockmeyer with Barksdale, *eahw@hockmeyerstudios.com*:

> *Dear School Communities,*
>
> *I believe that transparency is an integral part of offering the best service possible.  Some of you may have noticed changes over the past 19 months and most recently may be experiencing challenges while trying to wrap up your school year with regards to yearbooks, commencement, composites, etc.*
>
> *Many of you have worked closely with my parents (Brian & Ann) and me for years.  As a family, we feel it is important to share the following information:*
>
> *Hockmeyer Studios was sold to Barksdale School Portraits in August of 2018. Starting on August 20, 2018 Brian and Ann Hockmeyer were no longer the owners and played no part in the day to day operations of the studio.*
>
> *I remained on as an employee of Hockmeyer by Barksdale and operated the New England territory for Barksdale School Portraits.*
>
> *As of March 19, 2020 I have been laid off and I am currently not employed by Hockmeyer by Barksdale.*

*It has been a privilege to serve your communities for 38 years.   We are proud of the work that Hockmeyer Studios delivered to hundreds of thousands of homes and we wish you and your school communities all the best during these difficult times.*

*If you need help I recommend that you reach out to Wayne Barksdale at wbarksdale@barksdalephoto.com*

*Elizabeth*

*Elizabeth Hockmeyer-Williams*

*Brian & Ann Hockmeyer*

*Elizabeth.hockmeyerstudios@gmail.com*

*978.314.3503 (c)*

24.     Through this email, Williams intended to harm and did harm and undermine Hockmeyer with Barksdale and set herself up to solicit and take away the company's business – which she immediately did, costing the company hundreds of thousands of dollars in lost business.

25.     The email language indicated that it was sent by the entire Hockmeyer family, as evidenced by the statements: "As a family, we feel it is important to share the following information;"  "We are proud of the work that Hockmeyer Studios delivered to hundreds and thousands of homes . . .;" and the sign-off by Williams and "Brian & Ann Hockmeyer."  Brian and Ann Hockmeyer are Williams' parents who had sold the business to Barksdale School Portraits and agreed to support the transition of customers to Hockmeyer with Barksdale and not to compete or solicit such customers for five years from August of 2018.

26.     The email language also negatively suggested that since Barksdale School Portraits acquired the business, customers had noticed "changes" and experienced "challenges while trying to wrap up your school year with regards to yearbooks, commencement, composites, etc."

6

27.     The email also falsely claimed that Williams was "currently not employed by Hockmeyer by Barksdale."  The entire point of her email was to create the misleading impression in the minds of recipients that she and her family were Hockmeyer Studios, and that their business had little or nothing to do with Hockmeyer with Barksdale, even though she had helped manage the company for close to two years and that it was, in fact, the current embodiment of Hockmeyer Studios.

28.     Williams also touted the quality of "Hockmeyer Studios," the business her family had owned prior to 2018, while falsely suggesting they were not involved in running and supporting the business in the prior 19 months, when in reality the family helped facilitate the transition to Hockmeyer with Barksdale during that time period.

29.     The overall malicious, false and disparaging message conveyed was that the Hockmeyer family was no longer affiliated with the business, that there were problems at Barksdale, and customers who have any loyalty to the Hockmeyers should consider leaving.

30.     This message was neither vetted by nor approved by any supervisor of Williams or any manager of Hockmeyer with Barksdale before she sent it out on company email.  As Williams knew, such a message would have been rejected by the company, as it undermined the company and its customer relationships.

31.     The message, nevertheless, accomplished its designed purpose, leading at least six customers of Hockmeyer with Barksdale to end their relationships with the company, costing the plaintiff more than $300,000 in lost business (and counting).

32.     This lost business will compound over the years, as Hockmeyer with Barksdale and Barksdale School Portraits have had a stellar record of retaining more than 95 percent of

customers each year – with the average customer relationship lasting more than 10 years.

33.     Massachusetts, like most states, imposes a fiduciary duty of loyalty on employees, especially management employees, to not engage in conduct that is harmful to their employer.

34.     In addition to her improper disparagement of Hockmeyer with Barksdale, Williams engaged in a breathtaking streak of theft and destruction of the company's intellectual property and information.

35.     As administrator of the email accounts for Hockmeyer with Barksdale, she (with or without the assistance of her husband, Jeff, who is an IT professional) improperly, maliciously and without any legitimate business reason deleted all of her email communications from her eahw@hockmeyerstudios.com work email address, the same one she used to solicit Hockmeyer with Barksdale customers.

36.     These emails cannot be recovered.

37.     As a result of this malicious destruction of the company's property and information, Hockmeyer with Barksdale cannot determine the status of customer communications, sales, complaints and other business.

38.     Moreover, Hockmeyer with Barksdale has suffered irreparable harm due to Williams' improper communications, solicitations, defamation and disparagement of the company to its customers, and is unable to quantify in monetary terms the full extent of the damage to its reputation that resulted from her contacts with its customers.

39.     Hockmeyer with Barksdale also suffered significant harm due to Williams' deliberate failure to serve the company's customers and schools during her final months of employment.

40.     In addition, on or about May 22, 2020, counsel for Hockmeyer with Barksdale instructed Williams to place a "Litigation Hold" on all documents, emails, texts, notes, recordings and other information relating to her employment with the company and any contact with its customers, among other things.

41.      Despite this instruction, Williams subsequently destroyed and "wiped" all data from her company cell phone before returning it, in order to hide her wrongful conduct from Hockmeyer with Barksdale.

42.     Also, on information and belief, Williams stole equipment from Hockmeyer with Barksdale before leaving, including a company camera, computer, monitor, the company cell phone she used, and even the company cell phone number she had used (which was owned by the company, but which she began using to divert business to her new company, E-lluminations). When confronted about this theft, Williams responded through her lawyer that these items were her own personal property and she had receipts to prove it, but upon request for those receipts, she had none for the equipment at issue.

43.     She even posted the Hockmeyer with Barksdale phone number on her website to divert and mislead Plaintiff's customers to her new company.

44.     In order to accomplish this industrial theft and diversion of customers, Williams contacted Hockmeyer with Barksdale's telephone service and had it transfer the phone and number from company ownership to her own personal account.

45.     Williams was shameless, disingenuous and ruthless in her theft and misappropriation of company clients, assets and opportunities.

46.     Her efforts at customer confusion and diversion led several clients, including

Andover High School, to believe that she was the continuation of Hockmeyer with Barksdale. Andover posted to parents that it was having its commencement photography done by "Hockmeyer Studios" even though Williams and E-lluminations had stolen the business and performed the work.

47.     Phone records recovered by Hockmeyer with Barksdale also establish that she solicited Hockmeyer with Barksdale customers prior to ending her employment with the company, and then shortly thereafter began providing services for those customers through her new company, E-lluminations.

## COUNT I
## BREACH OF THE DUTY OF LOYALTY
### (Hockmeyer with Barksdale v. Williams)

48.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

49.     As Territory Manger for New England for Hockmeyer with Barksdale, in charge of leading and managing the company's operations in the entire region, Hockmeyer had a heightened duty of loyalty to the company under Massachusetts law.

50.     Despite this duty, Williams willfully and repeatedly undermined the company to its customers and employees, diverted business and business opportunities from the company to herself and her new business, neglected her duties at the company, and actively worked to sabotage the company's relationships with its customers.

51.     Williams' actions have caused Hockmeyer with Barksdale the deterioration of its customer relationships and good will, and the loss of at least six customers and $300,000 in revenues and profits, losses that will continue and expand for up to ten years.

2435844_1

52.     Hockmeyer with Barksdale will be irreparably harmed by Williams' continued wrongful competition and solicitation using the company's confidential information, by and through E-lluminations, if this wrongful conduct is not enjoined.

**COUNT II**
**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS/**
**CONTRACTUAL RELATIONS**
**(Hockmeyer with Barksdale v. Williams and E-lluminations)**

53.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

54.     As set forth above, Hockmeyer with Barksdale acquired all of Hockmeyer Studios' customer relationships and good will through the Asset Purchase Agreement.

55.     Williams and E-lluminations were aware of these relationships and Williams was specifically employed by Hockmeyer with Barksdale to manage and grow these relationships for the company.

56.     Despite this duty and responsibility, Williams, on her own and by and through E-lluminations, with improper means or motive, tortiously interfered with Hockmeyer with Barksdale's customer relationships through (1) undermining the relationships via her May 12 email and other communications that denigrated the company and the quality of its services and products, (2) neglecting the relationships while she worked at Hockmeyer with Barksdale in an attempt to compromise the company's image and make it easier to steal its customers upon her departure, (3) soliciting customers while still employed with Hockmeyer with Barksdale to join her at her new company, and (4) misleading customers of Hockmeyer with Barksdale into believing that she and her new business, E-lluminations, were in fact "Hockmeyer Studios."

57.     Defendants also tortiously interfered with the contractual relationships of

11

Hockmeyer with Barksdale in a second way.

58.     As set forth above, Hockmeyer with Barksdale entered into a valid and binding Asset Purchase Agreement with Bill and Ann Williams, the parents of defendant Williams.

59.     This Asset Purchase Agreement prohibits the Hockmeyers from competing with Hockmeyer with Barksdale or soliciting its customers or employees, directly or indirectly, for five years, starting in August of 2018.

60.     These restrictions included at Section 7.1 a prohibition against contacting any customer or prospective customer of the business "in an attempt to induce them to . . . terminate or curtail their relationship with the Buyer."

61.     In addition, Section 11 of the Agreement mandates that the Hockmeyers "shall use their best efforts to smoothly transition Customers from Seller to Buyer."

62.     Williams, and E-lluminations by and through Williams, were fully aware of this agreement with her parents and the restrictions it imposed on them, including those set forth above.

63.     Yet, through her May 12 email and other conduct, with improper means or motive, she assisted the Hockmeyers in breaching their obligations to Hockmeyer with Barksdale, including by soliciting them and using their help in competing, soliciting, and transitioning the company's business and relationships from Hockmeyer with Barksdale to Williams and her new business, E-lluminations.

64.     Williams and E-lluminations' actions were willful and malicious.

65.     Williams and E-lluminations' actions were outrageous and in knowing and willful violation of the law.

2435844_1

66.     Williams and E-lluminations' actions have caused Hockmeyer with Barksdale the loss of revenues and profits, and the deterioration of its customer relationships and good will, including the loss of at least six customers, in addition to the ongoing, irreparable and immeasurable harm from continued competition and solicitation.

## COUNT III
## MISAPPROPRIATION UNDER THE MASS. UNIFORM TRADE SECRETS ACT
### (Hockmeyer with Barksdale v. Williams)

67.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

68.     To make a claim for misappropriation of trade secrets, a plaintiff must show that the information is a trade secret; the plaintiff took reasonable steps to preserve the secrecy of the information; and the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret.

69.      Hockmeyer with Barksdale took reasonable steps to protect its proprietary customer information from use and exploitation by competitors, including expressly warning in its employee handbook that improper use of confidential business information by employees would subject them to legal action. The information exploited by Williams included non-public information as to the company's clients, client contracts, customer relationships, pricing, products, and intellectual property.

70.     In direct violation of this company policy and in breach of her confidential relationship with the company as a high-ranking employee, Williams solicited Hockmeyer with Barksdale customers to convince them leave the company for her new venture, E-lluminations.

71.     Williams' actions were willful and malicious.

13

72.     Williams' actions were outrageous and in knowing and willful violation of the law.

73.     Williams' actions have caused Hockmeyer with Barksdale the loss of revenues and profits, and the deterioration of its customer relationships and good will, including the loss of at least six customers, in addition to the ongoing, irreparable and immeasurable harm from continued competition and solicitation.

74.     Williams has used and will continue to use her access to Hockmeyer with Barksdale trade secrets to establish her own competing business, to market same to Plaintiff's customers, and to improperly undermine and steal the business and contracts of Plaintiff.

**COUNT IV**
**TRESPASS, CONVERSION AND DESTRUCTION OF PROPERTY**
**(Hockmeyer with Barksdale v. Williams)**

75.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

76.     As set forth more fully above, Williams misappropriated and destroyed the confidential information of Hockmeyer with Barksdale, including without limitation:

    a.   Deleting its email accounts before leaving the company, but using information from the company's email system to form and promote her own business, E-lluminations;

    b.   Deleting all information on her company computer before leaving the company, but using information from the company's email system to form and promote her own business, E-lluminations;

    c.   Deleting all information on her company cell phone before returning it to the

company, but using information from the company's email system to form

and promote her own business, E-lluminations; and

d.   Misappropriating and using the company's cell phone number, which she had

used for Hockmeyer with Barksdale business for decades, for her new

company, E-lluminations, including posting it on her website and diverting

customer calls from the company to her new business.

77.   After Williams, through her counsel, was instructed to return the Hockmeyer with

Barksdale cell phone and cease using the company's cell phone number, which she had

surreptitiously and improperly transferred from the company to her personal account, Williams

returned the phone and stopped using the number.

78.   However, Williams first deleted all information from the phone, including

property and information of Hockmeyer with Barksdale, despite the "litigation hold" notice and

notice of the legal claims against her.

79.   This was a brazen and deliberate destruction of evidence and information to hide

her illicit activities from Hockmeyer with Barksdale.

80.   Hockmeyer with Barksdale therefore seeks repayment of all damages caused by

this theft and destruction of property, the value of which is estimated in the hundreds of

thousands of dollars.

81.   Williams' conduct was willful, malicious and an outrageous violation of the law

and the rights of Hockmeyer s with Barksdale.

2435844_1

## COUNT V
## UNAUTHORIZED ACCESS TO AND REMOVAL OF ELECTRONIC COMMUNICATIONS UNDER THE STORED COMMUNICATIONS ACT
### (Hockmeyer with Barksdale v. Williams)

82.    Plaintiff re-alleges and incorporates by reference all allegations in the proceeding paragraphs.

83.    Williams ceded her authority as administrator of email accounts when she represented to Hockmeyer with Barksdale customers that she no longer worked for the company in her May 12 email.

84.    Subsequent to that, and before returning her company computer and cell phone, Williams removed non-public email communications from one of three of her company-provided email addresses stored on Hockmeyer with Barksdale's network.

85.    By doing so, Williams prevented Hockmeyer with Barksdale from accessing these email communications, rendering the company unable to assess the damage Williams inflicted on the company's customer relationships.

86.    Williams intentionally removed the emails from Hockmeyer with Barksdale's electronic storage, with or without the assistance of her IT professional husband, to conceal her wrongful solicitations of the company's customers, among other unlawful acts.

87.    Williams' conduct was willful, malicious and an outrageous violation of the law and the rights of Hockmeyer with Barksdale.

88.    Williams caused Hockmeyer with Barksdale actual damages and irreparable harm through her unauthorized access to and destruction of the company's stored electronic communications.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Barksdale School Portraits, LLC d/b/a Hockmeyer with

Barksdale requests the following relief:

(a)     A judgment declaring that Williams has breached her duty of loyalty to Plaintiff;

tortiously interfered with Plaintiff's contractual relationships; misappropriated Plaintiff's

trade secrets under the Massachusetts Uniform Trade Secrets Act; committed trespass,

conversion and destruction of Plaintiff's property; and violated the Stored

Communications Act, including without limitation the violations set forth above;

(b)     An award of damages against both Williams and E-lluminations, jointly and

severally, for the lost profits, expenses and damages that Hockmeyer with Barksdale has

suffered and will continue to suffer in the future as the result of the violations set forth

above;

(c)     An award of punitive damages against both Williams and E-lluminations for their

actions in willfully, maliciously and without legitimate reason violating the law, as set

forth above;

(d)     An award of treble damages under the Massachusetts Uniform Trade Secrets Act;

(e)     An award of plaintiff's fees and costs in this action, including without limitation

its reasonable attorneys' fees and costs;

(f)     An award of pre-judgment and post-judgment interest;

(g)     Sanctions as the Court deems appropriate resulting from the defendants'

spoliation of evidence; and

(h)     Such other relief as the Court deems just and appropriate.

2435844_1

Dated:  July 24, 2020                    By:   */s/Jeffrey A. Dretler*_____

                                         Jeffrey A. Dretler (BBO#558953)
                                         Rubin and Rudman LLP
                                         53 State Street
                                         Boston, MA 02109
                                         (617) 330-7078
                                         jdretler@rubinrudman.com

                                         Michael D. Homans
                                         HomansPeck, LLC
                                         1500 John F. Kennedy Blvd., Suite 520
                                         Philadelphia, PA 19102
                                         (215) 419-7477
                                         mhomans@homanspeck.com
                                         Motion for *Pro Hac Vice* Admission
                                         Pending

                                         *Attorneys for Plaintiff, BARKSDALE*
                                         *SCHOOL PORTRAITS, LLC D/B/A*
                                         *HOCKMEYER WITH BARKSDALE*