## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BARKSDALE SCHOOL PORTRAITS, LLC, d/b/a HOCKMEYER WITH BARKSDALE, and BSP NEW ENGLAND, LLC d/b/a HOCKMEYER WITH BARKSDALE, | : : : : : | Civil Action No. 20-cv-11393-IT |
|  | : | Civil Action No. 20-cv-11640-IT |
| Plaintiffs, | : : | (Partially Consolidated for Discovery and Scheduling Purposes) |
| v. | : : | |
| ELIZABETH HOCKMEYER WILLIAMS, and E-LLUMINATIONS, | : : : | |
| Defendants. | : : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENSE COUNSEL JEFF ROSIN AND DEFENDANT ELIZABETH WILLIAMS DUE TO COUNSEL'S MISCONDUCT IN SUGGESTING ANSWERS TO HER DURING HER DEPOSITION

## **TABLE OF CONTENTS**

I.   Introduction .................................................................................................................... 0

II.  Statement of Relevant Facts ........................................................................................ 1

   a.   Background and Overview ....................................................................................... 1

   b.   Deposition of Defendant Williams and Witness Leading by Rosin ...................... 1

   c.   Other Dishonesty by Williams, Propagated by and through Her Counsel ...................... 10

III. Discussion ..................................................................................................................... 11

   a.   Applicable Legal Standards ................................................................................... 11

   b.   Dismissal of Defendant Elizabeth Williams' Claims and Defenses Is Warranted
        Here Due to the Extensive Corruption of Her Testimony ................................. 12

   c.   Additional Sanctions Warranted ........................................................................... 15

IV.  Conclusion .................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

Castillo v. St. Paul Fire & Marine Ins. Co., 938 F.2d 776 (7th Cir. 1991).................................. 14

Chambers v. NASCO, 501 U.S. 32, 55 (1991) ................................................................ 11

Cook v. Am. Steamship Co., 134 F.3d 771, 776 (6th Cir.1998) .................................... 11

Cordova v. United States, No. CIV.05 563 JB/LFG, 2006 WL 4109659, at *3 (D.N.M. July 30, 2006) .......................................................................................................................... 12

Donelson v. Hardy, 931 F.3d 565, 569 (7th Cir. 2019) ................................................. 13

F.C.C. v. Mizuho Medy Co. Ltd., 257 F.R.D. 679 (S.D. Cal. 2009)............................. 16

Francisco v. Verizon S., Inc., 756 F. Supp. 2d 705, 712 (E.D. Va. 2010), aff'd, 442 F. App'x 752 (4th Cir. 2011)................................................................................................................. 12

GMAC Bank v. HTFC Corp., 248 F.R.D. 182, 196 (E.D. Pa. 2008) ........................... 13

Hall v. Clifton Precision, 150 F.R.D. 525, 531 (E.D. Pa. 1993).................................. 11

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944)................... 13

Horowitz v. Chen, 2019 WL 9313599, at *5 (C.D. Cal. 2019) ..................................... 16

Hull v. Municipality of San Juan, 356 F.3d 98 (1st Circ. 2004) ................................... 13

Joza v. Millon Air, Inc., No. 96-3165, slip op. (S.D. Fla. May 31 2001)...................... 13

Lorin Corp. v. Goto & Co., Ltd., 700 F.2d 1202, 1207 (8th Cir. 1983) ....................... 13

Maynard v. Nygren, 332 F.3d 462 (7th Cir. 2003)........................................................ 13

Pioneer Drive, LLC v. Nissan Diesel Am., Inc., 262 F.R.D. 552 (D. Mont. 2009) ...... 16

Rich Art Sign Co. v. Ring, 122 F.R.D. 472, 474 (E.D.Pa.1988) .................................. 11

Rodriguez v. M & M/Mars, No. 96 C 1231, 1997 U.S. dist. LEXIS 9036 (N.D. Ill. June 23, 1997) ............................................................................................................................. 13

Rule 3.4(b) of the Massachusetts Rules of Professional Conduct ................................ 17

Ryan v. Astra Tech, Inc., 772 F.3d 50, 53-54 (1st Cir. 2014) ...................................... 16

Schultz v. Sykes, 638 N.W.2d 604 (Wis. App. 2001) ................................................... 13

Schwartz v. Millon Air, 341 F.3d 1220 (11th Cir. 2003) .............................................. 13

Shimkus v. Scranton Quincy Clinic Co., LLC et al., Pa. Court of Common Pleas (Lack. Cty.), No. 19-CV-3534 (December 7, 2020) .............................................................................. 17

Specht v. Google, Inc., 268 F.R.D. 596, 598 (N.D. Ill. 2010)...................................... 12

Stanley Shenker & Assocs. v. World Wrestling Fed'n Entm't, 48 Conn Supp. 357 (Conn. Super. Ct. 2003) ...................................................................................................................... 14

Vargas v. Peltz, 901 F. Supp, 1572 (S.D. Fla. 1995)................................................... 13

Waddoups v. Noorda, No. 1:11-cv-133-CW-BCW, 2013 WL 5426272 (D. Utah 2013) ........... 17

Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 11-12 (1st Cir.1995).................................. 11

**Statutes**

28 U.S.C. § 1927.......................................................................................................... 11

**Rules**

Fed. R. Civ. P. 30 ......................................................................................................... 11

Fed. R. Civ. P. 30(c)(1)........................................................................................... 12, 15

Fed. R. Civ. P. 30(d)(2).......................................................................................... 11, 14

Rule 3.4(b) of the Massachusetts Rules of Professional Conduct ................................ 17

Rule 30(c)(2)................................................................................................................. 12

Rule 30(d)(2)................................................................................................................. 12

## I.      Introduction

Defendant Elizabeth Williams and her counsel, Jeff Rosin, engaged in egregious misconduct during her deposition, with Rosin audibly whispering answers to pending questions to her on nearly 50 different occasions, as recorded in the Zoom video of that deposition provided herewith.  Through this dishonest and bad-faith behavior, Rosin and Williams completely corrupted the judicial process, and her testimony as to all claims and defenses constitutes a fraud on the Court.  Accordingly, Barksdale requests that this Court dismiss all of defendant Elizabeth Williams' claims and defenses as the most appropriate sanction for this fraudulent and deliberate misconduct.

In addition, Barksdale asks that the Court use its inherent discretion and explicit authority to sanction misconduct under the Federal Rules of Civil Procedure to: (1) require Rosin and Williams, jointly and severally, to pay all fees and costs associated with bringing this motion, and responding to any subsequent opposition, as well as all fees and costs associated with the preparation for and taking of Williams' deposition and the videotaped recording of any subsequent depositions; (2) in the event Williams is allowed to proceed with any of her claims or defenses, prohibit her from testifying as to the items in which she was fed lines by her attorney, and instead instruct the jury to make an adverse inference from her inability to answer the questions candidly without the coaching of her lawyer; (3) grant the Barksdale parties the right to play and highlight to the jury the recorded exchanges of Rosin's witness-leading comments to demonstrate their misconduct and challenge their credibility; (4) refer this matter to the

Massachusetts Board of Bar Overseers for appropriate action against defense counsel, Jeff Rosin; and (5) stay discovery until this motion is resolved.[1]

## II.      Statement of Relevant Facts

### a.      Background and Overview

This case involves claims against Elizabeth Williams, the former New England Territory Manager of school photography company BSP New England, LLC, which is affiliated with Barksdale School Portraits, LLC (collectively d/b/a "Hockmeyer with Barksdale" and referenced below as "Barksdale" or "plaintiffs"), for (1) breach of her duty of loyalty to Barksdale, (2) tortious interference with contract, (3) misappropriation of trade secrets and intellectual property, (4) trespass and conversion of property, and (5) theft of electronic communications.  [Amended Complaint, ECF Doc. 5.]  In response to the original complaint filed July 24, 2020 [ECF Doc. 1], Williams and her husband, Jeff Williams, filed various counterclaims against Barksdale and three individual managers, alleging sexual harassment, retaliation, wage payment claims and loss of consortium.  In November of 2020, Williams posted on her Facebook page a link to her draft pleadings in this case, which accused Barksdale of "abusing women" and being of poor character, among other false and defamatory statements.  Wayne Barksdale's motion to amend the complaint to add a defamation claim is pending before the Court.  [ECF Doc. 35.]

### b.      Deposition of Defendant Williams and Witness Leading by Rosin

On April 28, 2021, the undersigned counsel for the plaintiffs, Hockmeyer with Barksdale, took the deposition of defendant/counterclaim plaintiff Elizabeth Williams.  Consistent with the Notice of Deposition sent to her counsel the deposition was taken remotely by Zoom

---

[1] Counsel for Barksdale conferred with counsel for Elizabeth Williams and attempted in good faith to resolve or narrow the issues cited herein before filing this motion, as noted in the certification below the signature line of this memorandum.

videoconference and recorded by video.  (**Exhibit 1** (stating that it would  be "recorded by stenographic means and videoconference recording").)

At the deposition (**Exhibit 2**, videorecording is deemed Confidential under the Confidentiality Order  in this case until 30 days after its taking (May 28, 2021), and therefore is being filed separately and emailed to Judge Talwani's chambers so that it is not yet a public record), Rosin and Williams sat in the same conference room in Rosin's law office and wore their PPE face masks throughout the deposition.[2]  Rosin's computer microphone was repeatedly muted.  When Barksdale's counsel asked that the masks be removed for the testimony, Williams and Rosin refused, with Williams indicating she was at "high risk" (despite choosing to take the deposition in Rosin's office with him, as opposed to at home or in a separate conference room).

At 5:05:45 (fifth hour, fifth minute, 45 seconds) into the deposition (the timing is tracked on Exhibit 2), Rosin can be heard stating under his breath, in response to question from plaintiff's counsel, "She would boss you around."  Williams then echoes that statement, saying "Well, she bossed me around . . ."  In order to hear the comment, it is helpful to turn up the volume on the recording and listen with earphones.

This was the first time that plaintiffs' counsel, the undersigned, had been able to hear a whispered phrase from Rosin via Zoom and immediately questioned the misconduct, objected, noted that the conduct was entirely inappropriate, unprofessional, and unethical, and instructed Rosin, "Please don't coach the witness or give answers to the witness."  Rosin did not deny or

---

[2] In addition, her husband Jeff Williams sat in the conference room with a face mask.  Also attending the deposition remotely by Zoom were Lauren Bressman, a contract lawyer with Rosin's firm, O'Hagan & Meyer, and a 2020 graduate of Northeastern University School of Law.  This misconduct is all the more disturbing as Rosin is the Managing Partner of his firm's Boston office and modeled this corrupt behavior to a newly graduated lawyer in his firm. Counterclaim defendants Wayne Barksdale, Susan Sheridan and Belle Lawrence also attended remotely by Zoom.

confirm that he had made the comment, other than to state to plaintiffs' counsel, "I would appreciate the snide comments being kept to yourself."  Plaintiffs' counsel then assumed it was a single egregious episode and proceeded with the deposition.

Upon completion of the deposition, plaintiffs' counsel had his office review the entire videotaped deposition record.  Upon doing so (with sound turned up and using earphones), it became apparent that Rosin and Williams had engaged in this witness leading and tampering with her answers throughout her deposition, apparently believing that having a remote deposition by Zoom, with face masks on, would conceal their unethical, unlawful and outrageous conduct.

To wit, an incomplete sampling of Rosin's 50-plus statements providing answers and information to Williams during the deposition questioning, includes:

1. At 24:26, Rosin states, "Don't recall" in response to a question as to a text she sent to her husband, telling him that she was "going to the Georgetown Dispensary and buying [marijuana] for everyone" and Williams repeats Rosin's answer;

2. At 26:40, Rosin states "No" in response to the question "Was that your practice on occasion to get marijuana for other people?" and Williams repeats Rosin's answer;

3. At 30:44, Rosin states "No" in response to a question as to Williams going to schools to handle Barksdale's school photography customers under the influence of drugs ("So, you may have?") and Williams repeats Rosin's answer;

4. At 39:22, Rosin states "just don't recall" in response to a question as to customers saying negative things about Hockmeyer Studios and Williams answers, "I don't recall."

5. At 47:07, Rosin states "Yes" in response to the question "Do you know you are making a claim for performing services without being paid for them in this lawsuit?" and Williams repeats Rosin's answer;

6. At 1:29:09, Rosin states "Yes" in response to the question "Do you understand that when you work for a company and a sales opportunity comes in, you can't divert that to a competitor.  Do you understand that?" and Williams repeats Rosin's answer;

7. At 1:41:50, Rosin states, "I don't know" in response to the question "Why did you put in your complaint that they had sold the business to Barksdale?" and Williams repeats Rosin's answer;

8. At 1:42:09, Rosin states, "Say I don't know" in response to the question "You just swore that [other than the asset purchase agreement that had just been shown to the witness, she had no knowledge of what her parents had sold to Barksdale] under oath to the federal court and to the Massachusetts Commission, but you had no understanding of that?" and Williams responds, "I don't know."

9.  At 2:27:50, Rosin states "No" in response to the question "What about Jeff, did he ever communicate to you that he couldn't work with you?" and Williams repeats Rosin's answer;

10. At 2:41:28, Rosin states "No" in response to the question "But you agree these [text messages between Williams and her husband, wherein he states, "I don't blame you, but I will hurt him" and "I will help you destroy him"] are pretty malicious remarks?" and Williams repeats Rosin's answer;

11. At 2:49:35, Rosin states "I don't know" in response to the question "And also around this time, the record you produced shows that Jeff changed your LinkedIn address from the Barksdale address and Hockmeyer address to an iCloud address. Why was that done?" and Williams repeats Rosin's answer;

12. At 3:02:25, Rosin states, "It didn't have to do with Barksdale" in response to the question, "Is there a reason you didn't want this [an email Ms. Williams received from her other job with Blaise Coco] on your work email?", and Williams repeats Rosin's answer;

13. At 3:20:30, Rosin states, "You don't own the business" in response to the question "If another business opened in Amesbury advertising itself as Hockmeyer Studios, would you have had any problem with that?" and Williams repeats Rosin's answer;

14. At 3:21:19, Rosin states "No" in response to the question "You knew that when you communicated this people would be confused and think you were Hockmeyer Studios, didn't you?  That's why you used that email?" and Williams repeats Rosin's answer;

15. At 3:31:07, Rosin states, "Repeat the answer" in response to the question "You knew they would not have approved this – sending this to the school customers?" and Williams repeats Rosin's answer;

16. At 3:34:41, Rosin states, "Your family – Jeff" in response to the question "Was it true that as a family you guys [Elizabeth and her parents, the former owners of Hockmeyer Studios] had that feeling?" and Williams repeats Rosin's answer;

17. At 3:44:15, Rosin states, "I was encouraging them to call Wayne" in response to the question "If you don't know how people would perceive it, why did you put [your parents] name there?" and Williams repeats Rosin's answer;

18. At 4:02:06, Rosin states, "I don't know" in response to the question "Through May 28, did you continue to get Hockmeyer email?" and Williams repeats Rosin's answer;

19. At 4:24:38, Rosin states, "I don't know" in response to the question "In fact, on May 12, the day you sent that email, in the morning you and your husband downloaded a ton of information, didn't you?" and Williams repeats Rosin's answer;

20. At 4:38:01, Rosin states "Yes" in response to the question "Have you looked to see what's on there [Williams' iCloud account] from May? and Williams repeats Rosin's answer;

21. At 4:38:04, Rosin states, "Nothing relevant" in response to the question "And what's on there?" and Williams repeats Rosin's answer;

22. At 4:38:09, Rosin states, "It's all personal things" in response to the question "What do you mean by that?" and Williams repeats Rosin's answer;

23. At 4:45:36, Rosin makes a comment about counterclaim defendant Susan Sheridan, and uses the term "fucking bitch."

24. At 4:48:50, Rosin states, "Wayne offered you ownership" in response to the question "But you wanted no ownership?" and Williams repeats Rosin's answer;

25. At 4:57:15, Rosin states "Say I don't know" in response to the question "Do you know that your lawyer voiced a similar type offer?  You're aware of that?" and Williams follows his instruction;

26. At 4:58:44, Rosin states "Yes" in response to the question "Even to your husband, no written communication with your husband about it?" and Williams repeats Rosin's answer;

27. At 5:03:42, Rosin states, "Say I'm no longer working for free" in response to the question "My understanding of the conversation is that you called and kept saying 'you guys are firing me' or 'you're firing me, aren't you?'" and Williams repeats Rosin's answer;

28. At 5:04:56, Rosin states, "And say that Susan wrote it" in response to the question "And you wouldn't write to your boss and say 'hey, what you just did there was harassing'?" and Williams follows his instruction;

29. At 5:05:13, Rosin states, "She's a part owner" in response to the question "What does Rosin's mean?" and Williams repeats Rosin's answer;

30. At 5:05:45, as noted above, Rosin states, "She would boss you around" in response to the question "Where did you get that knowledge from to think that a wife, just because she is a wife, is a co-owner of a business?" and Williams repeats Rosin's answer.  Below is the conversation between counsel when plaintiffs' counsel objects to Mr. Rosin telling the witness what to say:

| | |
|---|---|
| **HOMANS:** | Did you say, "boss me around all the time," Mr. Rosin? |
| **WITNESS:** | I'm sorry, I couldn't hear you. |

| | |
|---|---|
| HOMANS: | I heard Mr. Rosin say "she bosses me around all the time" and then you said it like two seconds later.  That's totally unprofessional. |
| WITNESS: | I was saying that she was the National Sales Manager. |
| COURT REPORTER: | I can't hear you when you're all talking over each other. |
| ROSIN: | I'm sorry, Michael, I couldn't hear you either.  Did you say my name? |
| HOMANS: | I did. |
| ROSIN: | Objection. |
| HOMANS: | Please don't coach the witness or give answers to the witness, Mr. Rosin.  I guess wearing a mask allows . . . |
| ROSIN: | Objection. |
| HOMANS: | Yeah.  Alright.  This could be a huge ethical violation. |
| ROSIN: | Ethical violation.  Michael, again, I'd appreciate the snide remarks being kept to yourself. |

31. At 5:11:23, Rosin states "Belle" in response to the question "Who was the staff there that you say he screamed at during the move?" and Williams repeats Rosin's answer;

32. At 5:13:10-13, Rosin states "Brad Els . . . and his wife" in response to a question as to who witnessed an alleged kiss in Las Vegas, and Williams repeats Rosin's answer;

33. At 5:34:39, Rosin states "Every time he came to the office" in response to a question as to when Wayne Barksdale allegedly kissed her (as part of her sexual harassment claim, which Barksdale completely denies), and Williams repeats Rosin's answer;

8

34. At 5:35:02, plaintiffs' counsel detected a whisper by Rosin and objected; in

    response Rosin claimed he had a pain in his side and was commenting about that;

35. At 5:56:39, Rosin states, "That's exactly what happened" in response to the

    question "Why would your parents get nothing if you walked away?" and

    Williams repeats Rosin's answer;

In sum, Rosin's corruption of Williams' testimony, with her knowing and full

cooperation, spanned the entire gamut of her claims and defenses, including for example:

- **On her sexual harassment claim**, Rosin instructing her on what to claim in her allegations as to supposed kissing of her by counterclaim defendant Wayne Barksdale (which Barksdale completely denies and Williams never alleged until four months after her resignation, after being sued by Barksdale);

- **On the misappropriation of Barksdale's customer relationships and good will**, Rosin instructing her as to what to state in response to her solicitations using the "Hockmeyer Studios'" and her parents' names, goodwill and other intellectual property that Barksdale had acquired in its purchase of Hockmeyer Studios;

- **On her claims against counterclaim defendant Susan Sheridan**, Rosin providing Williams with an answer as to whether Sheridan, who is not an owner, was somehow an owner of Barksdale School Portraits and related companies;

- **On the highly disputed claim that she was fired by Barksdale** (contrary to her documented communications to others that she "quit" or resigned) as an element of her sexual harassment and retaliation claim, Rosin providing Williams with instructions on what to say with regard to whether she resigned or was fired from Barksdale;

- **On the theft of Barksdale's confidential information and data**, Rosin instructing her to answer "I don't know" as to what information she and her husband admittedly downloaded from Barksdale's systems five days after she alleged she was fired; and Rosin instructing her to say "nothing relevant" with regard to information she retained and received from Barksdale but did not produce to the Barksdale parties in this litigation; and

- **On the defamation claim against her**, Rosin instructing her on how to answer whether her comments to her husband that they were going to hurt and "destroy" Wayne Barksdale were malicious.

    **c.**    <u>**Other Dishonesty by Williams, Propagated by and through Her**</u>
<u>**Counsel**</u>

Unfortunately, this case includes substantial additional evidence of dishonesty and bad

faith by Elizabeth Williams and Jeff Williams, implicitly supported by their counsel, including:

1.    Downloading extensive amounts of Barksdale's confidential
information but refusing to produce or identify with any specificity
what was downloaded.  This evidence is documented by a May 12,
2020 text email exchange between the Williamses, produced in
discovery:

> "Did it finish coping [sic]?"
> "No, still going."
> "Filemaker copies."
> "My stuff finished.  Your stuff is going."
> "So how much is left?"
> "It should finish today. We will just keep copying stuff all
> week.  They won't shut anything down."
> "Unless the [sic] shut it down?"
> "They won't even think of that.  And my computer is
> hidden in there."
> "Once your stuff finishes I am going to queue up more."

[Text exchange attached as **Exhibit 3**.]

2.    Completely wiping all data from her Barksdale cell phone before
returning it, despite a litigation hold notice to her attorney.  (<u>See</u>
Cease & Desist Letter, May 22, 2020, attached as **Exhibit 4**.)

3.    Representing herself to Barksdale customers as
"Elizabeth.hockmeyerstudios@gmail.com" after leaving
Hockmeyer with Barksdale, despite knowing that her parents had
sold the business, Hockmeyer Studios, to Barksdale, which had
acquired all rights to its intellectual property, business records and
good will, leading customers to falsely believe she was the
successor of Hockmeyer Studios.  (See **Exhibit 5** [Barksdale –
EHW 0132-134], showing that Andover High School falsely
understood that Williams' new company after she left Barksdale
was "Hockmeyer Studios".)

4.    Emailing all of Barksdale customers on the day she quit, May 12,
2020, claiming she was writing on behalf of her parents/"family,"
including a signature line that included her parents' names, despite
admitting at deposition that her parents (who had founded and sold

Hockmeyer Studios to Barksdale) never reviewed or approved that message (which she used to launch her new business and solicitations of Barksdale customers).

5.   Completely deleting all data and files from her Barksdale computer.

## III.   Discussion

### a.   <u>Applicable Legal Standards</u>

A district court has broad discretion to sanction misconduct.  See <u>Chambers v. NASCO</u>, 501 U.S. 32, 55 (1991); <u>see also</u> <u>Whitney Bros. Co. v. Sprafkin</u>, 60 F.3d 8, 11-12 (1st Cir.1995). In general, the burden of proof is on the party seeking the sanction.  See <u>Rich Art Sign Co. v. Ring</u>, 122 F.R.D. 472, 474 (E.D.Pa.1988); <u>cf.</u> <u>Cook v. Am. Steamship Co.</u>, 134 F.3d 771, 776 (6th Cir.1998) (burden of proof on party seeking sanction pursuant to 28 U.S.C. § 1927).

Rule 30 of the Federal Rules of Civil Procedure governs conduct during a deposition. Under Fed. R. Civ. P. 30(d)(2), a court has discretion to "impose an appropriate sanction – including the reasonable expenses and attorneys' fees incurred by any party – on a person who impedes, delays, or **frustrates the fair examination of the deponent**" (emphasis added). Further, "[t]his sanction may be imposed on a non-party witness as well as a party or attorney." Fed. R. Civ. P. 30, Advisory Committee Notes to 1993 Amendments.  "In general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer."  <u>Id.</u>

It is unacceptable for lawyers to attempt in any way to affect the witness's answer during depositions.  See <u>Hall v. Clifton Precision</u>, 150 F.R.D. 525, 531 (E.D. Pa. 1993) ("It should go without saying that lawyers are strictly prohibited from making any comments, either on or off the record, which might suggest or limit a witness's answer to an unobjectionable question."); <u>see also</u> <u>Cordova v. United States</u>, No. CIV.05 563 JB/LFG, 2006 WL 4109659, at *3 (D.N.M.

July 30, 2006) (imposing sanctions based on a lawyer's deposition coaching because "it became impossible to know if [a witness's] answers emanated from her own line of reasoning or whether she adopted [the] lawyer's reasoning from listening to his objections"); Specht v. Google, Inc., 268 F.R.D. 596, 598 (N.D. Ill. 2010) ("Objections that are argumentative or that suggest an answer to a witness are called 'speaking objections' and are improper under Rule 30(c)(2)").

In the present case, both defendant Williams and her counsel failed to adhere to Rule 30's standard as Rosin audibly fed lines and testimony to Williams on dozens of occasions regarding disputed material facts relating to her claims and defenses.  Williams invariably repeated Rosin's answer or followed the instructions he gave.  This misconduct clearly was premeditated, as Rosin arranged to have Williams in his office for her deposition by Zoom, in the same conference room (despite her claim of being at high risk due to COVID), and then kept on his COVID-19 face covering and muted his microphone through most of the deposition so that he could, literally, mask his whispering of lines to her.  This corruption of the deposition process, which is to be treated as if the testimony is being taken at trial in Court (Fed. R. Civ. P. 30(c)(1)), warrants the dismissal of all of Williams' claims and defenses, as well as the other sanctions requested, and any other relief the Court deems appropriate.

### b.    Dismissal of Defendant Elizabeth Williams' Claims and Defenses Is Warranted Here Due to the Extensive Corruption of Her Testimony

Rule 30(d)(2) does not limit the types of sanctions available, but rather, it only requires that the sanctions be "appropriate."  See Francisco v. Verizon S., Inc., 756 F. Supp. 2d 705, 712 (E.D. Va. 2010), aff'd, 442 F. App'x 752 (4th Cir. 2011) ("Although Rule 30(d)(2) does not define the phrase 'appropriate sanction,' the imposition of discovery sanctions is generally within the sound discretion of the trial court.").  Courts have found dismissal to be warranted when a party or its counsel suborns perjury (Schultz v. Sykes, 638 N.W.2d 604 (Wis. App.

2001)); suppresses evidence (<u>Maynard v. Nygren</u>, 332 F.3d 462 (7th Cir. 2003)); engages in

perjury (<u>Vargas v. Peltz</u>, 901 F. Supp, 1572 (S.D. Fla. 1995); alters evidence (<u>Joza v. Millon Air,

Inc.</u>, No. 96-3165, slip op. (S.D. Fla. May 31 2001), <u>rev'd in part sub nom</u>. <u>Schwartz v. Millon

Air</u>, 341 F.3d 1220 (11th Cir. 2003)); conceals relevant evidence bearing directly on the party's

credibility (<u>Rodriguez v. M & M/Mars</u>, No. 96 C 1231, 1997 U.S. dist. LEXIS 9036 (N.D. Ill.

June 23, 1997) (dismissing sexual harassment claim where plaintiff falsely denied in deposition

ever having been convicted of a crime); or otherwise commits a fraud on the Court.  <u>See, e.g.</u>,

<u>Hull v. Municipality of San Juan</u>, 356 F.3d 98 (1st Circ. 2004).

When deciding an "appropriate" sanction, a finding of bad faith supports the dismissal of

claims.  <u>See</u> <u>Lorin Corp. v. Goto & Co., Ltd.</u>, 700 F.2d 1202, 1207 (8th Cir. 1983) ("Dismissal

with prejudice is an extreme sanction and should not be imposed unless the default was willful or

in bad faith.").[3]  Factors a court may consider when deciding the proportionality of a sanction of

dismissal includes "the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm

from the misconduct, and the weakness of the case."  <u>Donelson v. Hardy</u>, 931 F.3d 565, 569 (7th

Cir. 2019).

When a party has engaged in "a deliberately planned and carefully executed scheme" that

accomplishes a fraud on the Court, dismissal of that party's claims is warranted.  <u>Hazel-Atlas

Glass Co. v. Hartford-Empire Co.</u>, 322 U.S. 238, 246 (1944).  "Fraud on the court" is used as

shorthand to describe a variety of improper acts that may lead to sanctions under the rules of

civil procedure or pursuant to a court's inherent powers in managing its docket.  <u>See, e.g.</u>,

---

[3] However, less "extreme" sanctions under Rule 30(d) do not necessarily require a finding of bad
faith.  <u>See GMAC Bank v. HTFC Corp.</u>, 248 F.R.D. 182, 196 (E.D. Pa. 2008) ("[T]he imposition of
sanctions under Federal Rule of Civil Procedure 30(d)(2) . . . does not require a finding of bad faith.").

Stanley Shenker & Assocs. v. World Wrestling Fed'n Entm't, 48 Conn Supp. 357 (Conn. Super. Ct. 2003).

In Donelson, the Seventh Circuit held that dismissal of the plaintiff's case was a proportional sanction, as the plaintiff himself had extensively obstructed his own deposition by refusing "to answer deposition questions by pretending 'confusion,' by falsely accusing counsel of trafficking contraband, and by deeming questions 'irrelevant.'" Donelson, 931 F.3d at 569; see also Castillo v. St. Paul Fire & Marine Ins. Co., 938 F.2d 776 (7th Cir. 1991) (holding case-ending sanctions were warranted for repeated instances deposition misconduct).

In the present case, the actions of not only defense counsel Rosin but also defendant Williams herself warrants dismissal of her claims and defenses, as both parties were acting in bad faith throughout her recent deposition. As noted above the following factors support dismissal of her claims:

- Rosin's improper leading of Williams occurred throughout her deposition and more than 50 times and is so extensive that all of her testimony is corrupted and the purpose of the deposition was "frustrate[d]" (Fed. R. Civ. P. 30(d)(2));

- Rosin and Williams obviously engaged in this scheme willfully, in bad faith, and with premeditation (and knowledge of her husband, plaintiff Jeff Williams in the related case, who was also in the room), including the arrangement to have her in his office with all of them wearing masks (rather than be in separate rooms, which would have been safer);

- When confronted with his witness leading, Rosin did not deny it;

- By feeding his witness answers rather than allowing Williams to answer from her own thoughts, Rosin was suborning perjury and Williams was engaging in perjury

14

(see <u>Schultz</u>, 638 N.W.2d 604 (Wis. App. 2001); <u>Vargas</u>, 901 F. Supp, 1572 (S.D. Fla. 1995)) and altering the evidence, all of which warrant dismissal as a sanction;

- Given that deposition questioning and cross-examination are to "proceed as they would at trial" (Fed. R. Civ. P. 30(c)(1)) and while Williams was under oath and Rosin was acting as a licensed officer of the Court, this misconduct constituted fraud on the Court;

- The specific questions corrupted went to the heart of the legal claims and issues in this case, including Williams' claims of sexual harassment, and Barksdale's claims of breach of the duty of loyalty, misappropriation of customer relationships and good will, theft of data and information, deletion of Barksdale's information, whether Williams quit or was fired, and defamation.

For all of these reasons, the most appropriate sanction in this case is dismissal of all of Williams' claims and defenses, with prejudice, as well as the remaining applicable sanctions below.

      c.      **<u>Additional Sanctions Warranted</u>**

Whether or not this Court finds dismissal an appropriate sanction, it should exercise its discretion to also sanction this misconduct in alternative, substantial ways, given its serious, premeditated and inexcusable nature.  First, Barksdale requests that defendant Elizabeth Williams be prohibited from testifying as to the questions in which she was fed lines by her attorney.  Further, Barksdale should be allowed to present to the jury the video recording of Rosin feeding Williams answers to the questions and her adoption of those answers, to establish her corruption of the process and lack of credibility.  In <u>Horowitz v. Chen</u>, the court held that in addition to monetary sanctions, the Magistrate Judge further recommended that the district court

instruct the jury that the counsel made improper objections at a deposition when the client was asked certain questions and that the Court should "permit Plaintiffs to play the relevant portions of Yishun's deposition video to impeach any testimony about when Kevin Xia was granted patent-enforcement rights." 2019 WL 9313599, at *5 (C.D. Cal. 2019).  Similarly, Barksdale should be granted the opportunity to showcase to the jury and the Court the audible examples of defense counsel feeding lines and testimony to defendant Williams, which she cooperated with and delivered, to demonstrate their willful misconduct during her deposition and lack of credibility.

Next, Barksdale seeks monetary sanctions for payment of all costs and fees associated with bringing this present motion, responding to any subsequent opposition, taking the corrupted deposition and videotaping of all future depositions in this case to ensure no further misconduct occurs.  In Ryan v. Astra Tech, Inc., counsel attempted to suggest answers during a deposition by writing notes on a legal pad and showing them to their client.  772 F.3d 50, 53-54 (1st Cir. 2014). The court upheld the district court's order that the lawyer pay the fees and costs for litigating the motion and videotaping all future depositions in the case.  Id. at 63.  See also F.C.C. v. Mizuho Medy Co. Ltd., 257 F.R.D. 679 (S.D. Cal. 2009) (ordering the plaintiff to pay the costs for defendant's counsel to attend a second deposition, the costs of a court reporter for the second deposition, and the attorney's fees associated with the motion to compel the second deposition); Pioneer Drive, LLC v. Nissan Diesel Am., Inc., 262 F.R.D. 552 (D. Mont. 2009) (requiring the defendant to pay the costs of a videographer and the plaintiff's costs and attorney's fees associated with the plaintiff's motion for sanctions); GMAC, 248 F.R.D. 182 (E.D. Pa. 2008) (requiring the deponent and the attorney defending the deposition to pay the costs and attorney's fees associated with the plaintiff's motion to compel a second deposition, as well as

75% of the costs and attorney's fees associated with the original deposition); Waddoups v. Noorda, No. 1:11-cv-133-CW-BCW, 2013 WL 5426272 (D. Utah 2013) (fining the plaintiff's two attorneys $2,500 each for violating Rule 30 and ordering them to pay the defendant's attorney's fees and costs).

For a case remarkably on point, Barksdale notes the recent decision in Shimkus v. Scranton Quincy Clinic Co., LLC et al., Pa. Court of Common Pleas (Lack. Cty.), No. 19-CV-3534 (December 7, 2020) (slip op. attached as **Exhibit 6**), in which a lawyer was caught feeding his client answers on tape during a Zoom deposition at least seven times. While the court noted that "[d]ismissal might well be appropriate if Plaintiffs' counsel had been feeding answers to the witness," lesser sanctions were granted, including preventing the witness from testifying at trial with respect to any of the items at issue, reimbursement of costs for the motion and response and preparation for the hearing on same, and referral of the matter to the state's Disciplinary Board. Id. at 7-9.

In addition, due to the corrupting nature of their conduct, and other demonstrated dishonesty in this case, Barksdale seeks a stay of discovery until this matter is resolved. Otherwise, Williams and Rosin could proceed with their unethical and sanctionable pattern of conduct during discovery, in ways that are not captured on videotape, depriving the Barksdale parties of their right to a fair trial and due process. Moreover, if Williams' claims are dismissed, as sought here, the scope of discovery could narrow substantially.

Finally, Barksdale asks the Court to refer this matter to the Massachusetts Board of Bar Overseers for appropriate action against defense counsel Jeff Rosin. Under Rule 3.4(b) of the Massachusetts Rules of Professional Conduct, "a lawyer shall not . . . falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law."

17

Here, Rosin deliberately violated his ethical duty as a licensed attorney by attempting to take advantage of the remote setting of the deposition and audibly direct his client on how she should answer specific questions, in direct violation of the law and his ethical obligations as an officer of the Court.  Accordingly, this Court should report such a blatant example of attorney misconduct to the Massachusetts Board of Bar Overseers in order to determine the proper action against Rosin.

IV.     **Conclusion**

For the foregoing reasons, Barksdale respectfully requests that this Court dismiss all of defendant Elizabeth Williams' claims and defenses, with prejudice.  Additionally, Barksdale moves that the Court use its inherent discretion and explicit authority to sanction misconduct under the Federal Rules of Civil Procedure to: (1) require Rosin and Williams, jointly and severally, to pay all fees and costs associated with bringing this motion, and responding to any subsequent opposition, as well as all fees and costs associated with the preparation for and taking of Williams' deposition and the videotaped recording of any subsequent depositions; (2) in the event Williams is allowed to proceed with any of her claims or defenses, prohibit her from testifying as to the items in which she was fed lines by her attorney, and instead instruct the jury to make an adverse inference from her inability to answer the questions candidly without the coaching of her lawyer; (3) grant the Barksdale parties the right to play and highlight to the jury the recorded exchanges of Rosin's witness-leading comments to demonstrate their misconduct and challenge their credibility; (4) refer this matter to the Massachusetts Board of Bar Overseers

for appropriate action against defense counsel, Jeff Rosin; and (5) stay discovery until this

motion is resolved.

Respectfully submitted,

Dated: May 13, 2021         By:  *s/Michael D. Homans*

                    Michael D. Homans
                    HomansPeck, LLC
                    The Suburban Building
                    134 North Wayne Ave., Ste. 300
                    Wayne, PA 19087
                    (215) 419-7477
                    mhomans@homanspeck.com
                    *Admitted Pro Hac Vice*

                    Jeffrey A. Dretler (BBO#558953)
                    Rubin and Rudman LLP
                    53 State Street
                    Boston, MA 02109
                    (617) 330-7078
                    jdretler@rubinrudman.com

                    *Attorneys for Plaintiffs, BARKSDALE SCHOOL*
                    *PORTRAITS, LLC D/B/A HOCKMEYER WITH*
                    *BARKSDALE and BSP NEW ENGLAND, LLC,*
                    *Wayne Barksdale, and Susan Sheridan-Barksdale*

### Certification of Consultation
### Pursuant to Local Rule 7.1(a)(2)

      I, Michael Homans, hereby certify pursuant to Local Rule 7.1(a)(2) that I conferred with opposing counsel Jeff Rosin on May 12, 2020 by telephone (as well as raising the issue with him at depositions on April 28 and April 30, 2020) and attempted in good faith to resolve or narrow the issue before filing this Motion.

Dated:  May 13, 2021             Respectfully submitted,

                    *s/Michael D. Homans*
                    Michael D. Homans