UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARKSDALE SCHOOL PORTRAITS LLC d/b/a HOCKMEYER WITH BARKSDALE, and BSP NEW ENGLAND, LLC d/b/a HOCKMEYER WITH BARKSDALE<br><br>*Plaintiffs*,<br><br>-v-<br><br>ELIZABETH HOCKMEYER WILLIAMS And E-LLUMINATIONS,<br><br>*Defendants*.<br>_____<br>ELIZABETH HOCKMEYER WILLIAMS, E-LLUMINATIONS (a d/b/a of JCW CONSULTING, LLC)  AND JEFF WILLIAMS<br><br>Counter and Cross-Claim Plaintiffs, AND PLAINTIFFS<br><br>-v-<br><br>BARKSDALE SCHOOL PORTRAITS LLC d/b/a HOCKMEYER WITH BARKSDALE, BSP NEW ENGLAND, LLC d/b/a HOCKMEYER WITH BARKSDALE, WAYNE BARKSDALE, individually, and SUSAN SHERIDAN, individually.<br><br>Counterclaim Defendants, | Civil Action No. 1:20-cv-11393-IT<br><br><br>Partially consolidated for discovery purposes with Civil Action No. 1:20-cv-11640-IT |

## <u>MOTION TO COMPEL AND FOR SANCTIONS</u>

Elizabeth Willliams ("Elizabeth") and Jeff Williams ("Jeff"), individually and on behalf of fellow defendant E-Lluminations/JCW Consulting, LLC, hereby move to compel continued depositions and the remaining discovery from Plaintiffs-Counterclaim Defendants (altogether, the "Barksdale Parties"). Through counsel, Elizabeth and Jeff have conferred on these matters since

1

March, 2020.  They have been met with refusals, delays, minimal satisfaction on some items, but most recently, claims at the depositions of Wayne Barksdale ("Wayne"), Susan Sheridan ("Susan"), and Belle Lawrence ("Belle") that they have waived their right to additional documents by pre-deposition conferences between counsel and/or by taking depositions before they had all of the documents they sought, and the full and complete interrogatory responses.[1]  The problems with that position are three-fold:

1. Attorney Michael Homans has been the source of the delay of the discovery, which has led to the lack of complete discovery as to relevant matters prior to their depositions.  In other words, taking certain depositions without all documents available and produced was a product of Attorney Homans' delay.

2. Attorney Homans conferred and, in a number of way, informed the undersigned that many discovery requests were overbroad, and called for irrelevant information, but Attorney Michael Homans was all the while either (a) holding onto the documents himself, (b) failing to conduct the most basic inquiries to properly obtain what was sought when counsel conferred about the outstanding discovery, (c) claiming documents did not exist when witnesses testified at their depositions they did exist and were readily produced.  All of this became clear at the recent depositions themselves, so the notion that there was any waiver of rights prior to the deposition, when the depositions themselves revealed the existence of the documents, is non-sensical.

---

[1] For the Court's reference, Wayne's deposition was approximately 4 hours; Belle's was approximately 2 hours, and Susan's was approximately 3 hours.  All were concluded by way of a comment by the undersigned that he was suspending further questioning pending receipt of further documents.

3. Discovery is ongoing and was recently extended 30 days by joint motion. In other words, any position that discovery is "waived" is contrary to the fact that discovery remains ongoing.

In short, Attorney Homans' unilateral effort to claim some discovery has been waived must be preempted and rejected, and the relief requested herein should be granted.

Jeff/Elizabeth's document requests and Plaintiffs'-Counterclaim Defendants' objections/responses are attached hereto as Exhibit 1. Jeff/Elizabeth's interrogatories and Plaintiffs'-Counterclaim Defendants' responses are attached hereto as Exhibit 2. Relevant emails conferring on matters since March 2020 and after the depositions of Wayne, Susan and Belle are also attached hereto as Exhibits 9-14. Below, Part I reflects an introductory statement of the case and background to the relevant discovery sought while Part II reflects a detailed analysis of the discovery sought, objections, history of conferring, and why the continued depositions should be compelled after the final documents are produced.[2]

For the reasons below, the discovery Elizabeth and Jeff seek must be produced, promptly, and the depositions of Wayne, Susan and Belle should be continued despite Attorney Homans' efforts to terminate them and claim that the undersigned has somehow "waived" further discovery or somehow "waived" the right to further documents. Further, Elizabeth and Jeff should be awarded their costs, expenses and attorneys' fees for making this motion and needing to continue

---

[2]     Elizabeth and Jeff understand that Attorney Homans may continue to confer, and indeed, the Barksdale Parties may still be willing to produce some of the categories of documents requested herein. However, that is beside the point requested herein. At his clients' recent depositions on May 7, 11 and 13, Attorney Homans took the position that those depositions were over and terminated despite the undersigned (a) not taking anywhere close to 7 hours, (b) stating on the record that the depositions were suspend after only a few hours because (c) it became clear that they did not have a full document production on plainly relevant and available documents. The existence of documents and their production has been obfuscated and delayed for months. Given the fact that discovery has just been extended through early July, the requests herein: Court supervision of the remaining areas of documents to be produced, and Orders in connection therewith, as well as an Order that depositions can continue upon Attorney Homans' clients complete document production, this Motion is made at this time. Doing so will ensure no further delays of discovery and permit this case to continue to proceed expeditiously, as Elizabeth and Jeff need.

the depositions of these witnesses as a result of Attorney Homans' and his clients' delays in producing relevant documents.

## I.    INTRODUCTION

This is a case that is premised upon an unfortunate abuse of power, and a three-plus year time-frame of causing intentional harm and suffering to Elizabeth and her husband, Jeff. It is escalated by the efforts of Attorney Homans to deprive Elizabeth and Jeff of legitimate discovery that exists, is readily retrievable, and some of which Attorney Homans actually already supposedly has from his clients.

Wayne acquired the "Hockmeyer Studios" company owned by Brian and Ann Hockmeyer ("Brian and Ann"), Elizabeth's parents, in August 2018. Wayne's company is reportedly owned by him, his brother and his sister.

Elizabeth became the key employee in the New England region thereafter. However, the acquisition was such that the buying company did not pay any up-front money to Brian and Ann. Instead, they were to earn an approximate 10% percent of revenue from the revenue generated in New England for the 4 twelve-month periods thereafter (August 2018-August 2019, August 2019 to August 2020, August 2020-2021, etc.). (See Exhibit 3) That gave Wayne and his wife, Susan Sheridan, National Sales Manager, substantial power over Elizabeth. Making matters worse based on what would occur after the acquisition, Jeff was hired by the company as its Information Technology Director. That put Jeff firmly under the thumb of Wayne and Susan as well.

The acquisition closed in or about August 2018. Wayne Barksdale traveled to Massachusetts shortly thereafter. Upon his arrival to the Hockmeyer Studios office in Massachusetts, and despite having known Elizabeth for over a decade through conferences in the

industry by that time, Wayne approached her and, as Elizabeth describes in her deposition, kissed her for more than 5 seconds on the mouth.  He had never kissed her on the lips before, which is undisputed.  Wayne did that in front of Jeff and others, and Jeff had to be held back by fellow employee, Mo Ehtasham, because Jeff intended to become physical with Wayne having witnessed that, as Jeff testified at his deposition.  In addition to this unlawful behavior, Wayne was also regularly, and generally, highly aggressive, angry and overall abusive toward Elizabeth. He had actually bragged to her that, after a prior acquisition of another company, he had "intentionally" drove the seller crazy.  As Elizabeth described at her deposition, Wayne kissed her every time he came to New England after that.  And, he did so again through his last time seeing her before the COVID crisis in January 2020 at a conference in Las Vegas.

Even Wayne agreed at his deposition that it is inappropriate for a supervisor to kiss a subordinate.  Ironically however, this was how he ended up with Susan.  Specifically, in 2010, after Susan had been working for the company for 6 years, they started a relationship and got married in December 2018, after having lived to together for a number of years and, actually, 4 months after the acquisition of Hockmeyer Studios (which, as Jeff reports, was supposedly due to pressure from Susan who witnessed Wayne taking a romantic liking to Elizabeth).  Susan rose in power at the company thereafter and was made National Sales Manager at the time of the Hockmeyer Studios acquisition.  Susan had started with the company as a part-time photographer in 2004.

Elizabeth tried to complain to Belle, who was admittedly in charge of Human Resources, on at least two occasions, and while Belle told Elizabeth she deserved better, Belle failed to correct the misbehavior at all.  Truly, there was nothing she could do.  Wayne's company was family owned, and Belle had been their loyal employee for numerous years, growing with the

company as well. That said, Belle also acknowledged at her deposition that it was inappropriate for a supervisor to kiss a subordinate.

As Elizabeth and Jeff both testified at their depositions, Wayne held their family's entire financial future in his hands, including that of Elizabeth's parents. Jeff resigned a little less than 1-year later, in July 2019. As he told Wayne, continuing in the job would mean the end of his marriage. Indeed, Elizabeth and Jeff have disclosed in this case their private text messages to each other. Overall, they describe the devotion and love Jeff has for Elizabeth, their struggles as a couple, and the ups and downs of their lives in general. They have made their private text messages an open book in this case. They have also willingly signed releases for all of their medical and psychological records in response to Attorney Homans' discovery requests, all without any effort to preclude any discovery, however invasive. At their depositions, Attorney Homans clearly intended to embarrass them with their private text messages and information in their medical records at their depositions.

After Jeff resigned, he asked to be paid his accrued and unused vacation time (approximately 80 hours) but was denied it. He brought up the need to be paid these wages under Massachusetts law. It was still denied. Yet, from the moment he resigned, there is documented evidence and undisputed testimony that the company would need his services thereafter. And, it is undisputed that Jeff would continue to serve the company in multiple ways for months thereafter. Belle was clearly prepped at her deposition to state that Jeff only assisted with passwords after his resignation. It was an incredible claim. (See Note 3, *infra*) Presented with some of the documentary evidence Jeff had produced, she grew uncomfortable and recanted, and only reconciled on the admission that while Jeff worked for the company, the hours he logged were inflated. To be sure, Jeff performed far more than 80 hours of work over

6

the months that followed.  He performed hundreds of hours of work. (See Exhibit 4[3])  Multiple employees were calling on Jeff repeatedly to assist; he was the former IT Director, and Wayne failed to replace him at all after his resignation.  Jeff felt stuck too, and as he reported in one text message to Wayne after his resignation, he was working 4-6 hours per day doing Wayne's company work, and risking his new job. (See Exhibit 5)  Wayne did not even respond to that text, and it is undisputed he never paid Jeff for any of his post-resignation services.

When COVID occurred and there were government shut-downs in March 2020, Elizabeth and everyone else in the New England office was laid off.  However, there remained substantial work to do in New England.  Elizabeth continued to work, undisputedly, and undisputedly without any ongoing salary.  She fielded calls and emails from customers, coordinated such work over an undisputed 52 minute call with Wayne and Susan on April 21, 2020, and she took care of the physical office itself.  She prepared an entire proposal for the Nashua schools, but the Barksdale Parties have failed to produce that as well, despite the requests for it.  Curiously in fact, Attorney Homans has produced none of the emails that exist on the Barksdale services reflecting all of this work by Elizabeth, despite multiple requests.  However, Wayne acknowledged that Elizabeth did some of this work at his deposition, but notably, claimed she was doing so "to help her parents' business" due to the ongoing revenue they would receive from her efforts.  (However, Wayne further had to acknowledge when presented with Exhibit 3 hereto in response to that testimony that 88-90% of that revenue would belong to his company, while

---

[3]    Jeff noted two typos in Exhibit 4 at his deposition where his hours were inadvertently recorded wrong on two days.

only about 10-12% of that revenue was to benefit her parents.)[4]  Attorney Homans has failed and refused to produce any of the emails that customers sent to her post-layoff in March 2020.

Then, on a Zoom call with Susan on May 7, 2020, Susan "fired" Elizabeth.  Susan says Elizabeth quit.  Wayne says Susan did not have the authority to fire Elizabeth.  The entire debate is notable:  it is undisputed Elizabeth was laid off in March, and it is undisputed she was not being paid between March and May 7, 2020.  Yet, Plaintiffs filed a pleading signed by Attorney Homans saying that Elizabeth was "still employed" through May 7, 2020. (See Exhibit 6 (Document 30 filed in 1:20-cv-11391-IT at ¶¶ 11, 20)  However, Wayne has testified at his deposition that this position in his pleading was false.  Yet, Wayne and Susan have still made this a debate, taking the position at their depositions that Susan did not have the authority to fire Elizabeth, no doubt coached and prepped on this matter given its importance in the case.  This is perhaps because on that call, Susan admitted at her deposition that Elizabeth was anxious about all of the customer calls and photography that was upcoming in June, 2020, and was wondering what the company's plan was, given that it had no employees and was not paying any employees in New England, and given Elizabeth would be expected to deliver for those customers.  Elizabeth needed help to meet those customers' needs.  Susan's response to her was simply that she should have planned for it sooner, and she should figure it out and, in essence, "hop to it" right away.  Elizabeth got angry and replied that she was done working for free, and then, there arises the dispute about whether Susan "fired" Elizabeth or somehow "resigned" and whether Susan had the authority to fire Elizabeth.

---

[4]    Wayne's testimony on this point is notable, as it evidences his awareness that Elizabeth was "stuck" in a situation of trying to take care of her parents, and also endure what Wayne was doing to her.  It was in effect, an acknowledgement of the power he had over her inherently given her role.

This disputed issue has caused the following on Plaintiffs' part.  First, in Plaintiffs' Answer and Affirmative Defenses to Elizabeth's counterclaims, Plaintiffs state that Elizabeth had a "dotted line" reporting relationship to Susan. (See Exhibit 6 at ¶ 6)  At his deposition, however, Wayne stated that this statement in his pleading signed by Attorney Homans was also false and that Susan had no authority over Elizabeth.[5]  It was an incredible claim given Susan's mere title of National Sales Manager, and the fact that she is Wayne's wife.  More concerning, completely missing from Plaintiffs' document production were any documents or emails between Susan and Elizabeth over the years that would show her direction, control and supervision over Elizabeth.  At her deposition, however, Susan stated that she had provided all of those documents to Attorney Homans.  None of them were produced by Attorney Homans, but presumably all of them demonstrate circumstantial (and perhaps even direct) evidence of Susan's authority as National Sales Manager over Elizabeth..

Plaintiffs' complaint is premised, in part, on Elizabeth having engaged in wrongdoing after May 7, 2020, including with her May 12, 2020 letter to customers. (See Exhibit 7)  *First,* the text of the letter is neutral, and it directs customers to get in touch with Wayne if they have questions.  *Second,* it is undisputed Elizabeth was not under a non-compete or non-solicit, so there were no restrictions on her soliciting customers.  *Third,* to the extent there was any harm from that letter (which there was not), it is curious that, as Susan testified, no one from the company even came to Massachusetts to try to retain business until June 11, 2020.  Yet, this letter begat the premise for Plaintiffs' lawsuit – that Elizabeth somehow did not have the right to start her own business and compete.  And, somehow, if Elizabeth was going to compete, new business she got still belonged to the Barksdale Parties, even though there was no one employed

---

[5]    When Wayne's transcript is available from his May 7, 2020 deposition, the undersigned will supplement the record with this excerpt.

in New England to answer the telephones. While Plaintiffs were also concerned that Elizabeth took information from them, that is not the case. Elizabeth has answered discovery on that matter fully and fairly.

In short, Jeff worked for free and, after her layoff, Elizabeth worked for free. Wayne, Susan, Lawrence and others were well-aware of all of it. Yet, after Wayne decided that he did not like the letter Elizabeth sent on May 12, 2020 (Exhibit 7) – which incidentally, was nearly two months after her layoff -- Elizabeth was first met with a settlement effort that attempted to drive her into agreeing to a non-compete/non-solicit, and sharing a substantial portion of her revenues (greater than the 10% her parents were supposed to receive, meaning she would be paying her parents herself, in addition to paying Wayne) of her competing company with Wayne for a period of time thereafter: in essence, using a demand letter and the threat of a lawsuit to bully Elizabeth into staying tied to him legally. Further, Wayne stopped paying Elizabeth's parents completely, including on pre-COVID revenues from August 2019 to March 2020. There is testimony in Elizabeth's deposition about that matter.

As Elizabeth testified at her deposition, she could not agree to any of those terms. But, torn and potentially willing to accept them, she provided leads to Wayne's company, so that he would see her acting in good faith and simply part ways amicably. For Elizabeth, this was just another tactic by Wayne to control her, and she lost business because of this ongoing pattern. For her, the result was in her words the biggest failure of her life, because she ended up with this lawsuit. This lawsuit is something Elizabeth testified never wanted but, as she further testified, it is something she is determined to see through and endure because she is finally standing up to Wayne, as difficult as that is, and as difficult as her opposing parties and counsel try to make it.

## II.     DISCOVERY REQUESTS, EFFORTS TO CONFER, ARGUMENT

Broadly speaking, under Fed. R. Civ. P. 26, the Barksdale Parties have an obligation to produce all materials relevant to the claims and defenses in this case.  That said, to be sure, Elizabeth served a broad discovery request along those same lines.

### *Document Request No. 10*

*Document Request No. 10 seeks all documents that concern, relate to, or support the Barksdale Parties' claims or defenses to counterclaims in these matters.*

It is not that, by "words," the Barksdale Parties did not agree to adhere to this obligation. It is that, by "actions" and "conduct," they are effectively delaying and thwarting this obligation. Moreover, the most recent claim that all rights to continue the depositions of Wayne, Belle and Susan are terminated and waived is untenable.  As further background, after many days of seeking to set up a discovery conference, the first discovery conference occurred on March 12, 2021.  That communication, and the more specific discovery requests addressed therein are also addressed below.

Important to the background here is that, by way of the initial Scheduling Order, all fact discovery was set to close June 3, 2021.  The parties each served their written discovery on December 23-24, 2020.  The Barksdale Parties' initial production – a mere 277 pages, and amounting, in essence to Elizabeth's and Jeff's personnel files (but not their payroll records) – were produced in the last week of February, 2021 – 60 days later.  Pages 277-911 followed on March 1, 2021, but other than Wayne's text messages to Elizabeth, it did not include any internal emails pertaining to the claims and defenses in the case, or the more specific discovery sought in multiple other requests.

On March 12, 2021, the parties conferred for the first time, and the undersigned memorialized that by way of an email to Attorney Homans. Many of the matters raised therein, as is evidenced by the email, required a further response from Attorney Homans. (See Exhibit 8 hereto)

On April 14, 2021, Jeff/Elizabeth's payroll records were sent (despite the promise to produce them March 19, 2021, as evidence by Exhibit 8 at 2, referencing Request No. 15), as was a hodgepodge of customer information, substantially redacted, in Pages 912-949. Elizabeth's deposition was set for April 28, 2021, by agreement, and Jeff's deposition was set for April 30, 2021, by agreement. Both took place as scheduled.

Meanwhile, Jeff/Elizabeth sought three depositions and agreed that Belle would be deposed May 4, 2021, Wayne May 7, 2021, and Susan May 13, 2021. Due to the undersigned's own scheduling change, Belle was moved to May 11, 2021. All three depositions took place then as scheduled.

On May 6, 2021, at 4:55 p.m. before Wayne's deposition on May 7, 2021, Attorney Homans produced pages 950-1066, which included further redacted customer information, certain additional text messages (Attorney Homans admittedly removed numerous text messages on his claim of irrelevance), and a select group of a few emails only. At Wayne's deposition on May 7, 2021, however, there was mention of a critical May 25, 2020 letter that the Barksdale Parties allegedly sent to customers in order to attempt to retain business after Elizabeth sent her May 12, 2020 letter. This letter had not been produced. It appeared to have been mentioned in one of the text messages the undersigned reviewed when received on May 6, 2021, and, as a result, it was requested by email prior to Wayne's deposition. It was not produced prior to that,

however.  It was produced by email on May 11, 2021, after Belle's deposition concluded. (See Exhibit 9)

This, among other documents that were clearly and squarely relevant to the case, were matters that came up during the depositions of Wayne and Belle.  The same happened at Susan's deposition.  The undersigned ended each of those depositions by noting they were being suspended given the reference to this and multiple other documents that were available and not yet produced.  Attorney Homans objected and claimed at each that further deposition questioning was "waived" because the undersigned chose to take his clients' depositions prior to having all documents.  Attorney Homans also claimed that requests for further documents were somehow waived due to conferences that occurred prior to Wayne, Belle's and Susan's depositions.

As a result, the Court's intervention is needed at this time on multiple matters pertaining to Jeff/Elizabeth's discovery requests, the delays on the outstanding discovery sought, and the issuance of an Order for the continued depositions of Wayne, Susan and Belle.

One document request to highlight in particular is as follows:

**_REQUEST NO. 18:_**  _"All emails from or to the_ Elizabeth@hockstudios.com _address from August 2018 to the present."_

> _Objections:  overly broad, unduly burdensome, disproportionate to the needs of the case._

In the course of discovery conferences, the undersigned offered to limit this request to January 2020 to the present. (See Exhibit 10 at 3 hereto)  Further, select emails produced by the Barksdale Parties showed the undersigned that an alias similar email was EAHW@hockstudios.com was used in addition to the above.  As such, following the depositions, and consistent with Request Nos. 18 and 10, those emails from that address for the

same time-period were requested as well. However, Attorney Homans is refusing to produce all of these clearly relevant emails. Among other things, they will show that (i) Elizabeth was working for the company after March 2020, and (ii) the Barksdale Parties continued to utilize these email addresses to communicate with customers, and therefore, this is relevant to their damage claims and, potentially, Elizabeth's unfair competition or other claims. Notably, and separately, but along the same lines, the Barksdale Parties have yet to produce the "Nashua Slides" that are referenced in Bates 139, and evidence Elizabeth preparing an entire proposal to attempt to secure business while she was "laid off" in April 2020 and not being paid by the company.

That said, the effort and willingness to narrow this Request No. 18 has now been changed by Susan's deposition. At Susan's deposition, Susan further testified that she regularly communicated with Elizabeth by email, perhaps at least once per week. None of those emails were produced, even though Susan testified she provided them to Attorney Homans. Thus, now, given Susan's testimony, and the Barksdale Parties' position that Susan (despite her National Sales Manager title) did not direct or control Elizabeth's work, in addition to the period narrowed above, all emails by and between Susan and those email addresses must be produced from August 2018 to May 2020. This clearly relevant discovery is not a new discovery request and it has not been "waived" as Attorney Homans has taken such a position in email communications on other matters. (See generally Exhibits 11-14)

**INTERROGATORIES NOS. 1 AND 2**

Interrogatory 1 and Interrogatory 2 were initially and intentionally broad as seeking customer identification and customer revenue information of the Barksdale Parties since 2018 such that Elizabeth could (a) assess the claim that the Barksdale Parties lost customers

supposedly as a result of her letter (Exhibit 7), (b) what that claimed damage might be and

further, (c) to cross-examine the notion that these customers made any such decisions about what

vendor to use as a result of Elizabeth's letter versus other factors (e.g., COVID or other factors).

The undersigned conferred with Attorney Homans starting March 12, 2021 about this matter,

continued to confer on April 2, 2021, and received some of that information April 14, 2021, but

the May 6, 2021 information received later appeared to modify it anyway.[6]

That said, at the depositions of Wayne, Susan and Belle, it became clear that is readily

possible to print reports from the Barksdale Parties' database that demonstrate (i) what customers

came into the company after August 2018, (ii) the revenue from them, and (iii) what customers

have re-booked and stayed with the company post-May 2020. This is incredibly simple and

fundamental to the claim of lost customers and/or damage by way of Elizabeth's alleged

wrongful actions. In fact, Susan testified that some signed up into 2021 (having sat tight for

months during COVID and not been willing to book anything in 2020), yet the 2021 information

in this regard has not been produced and would not be produced absent constant follow-up by the

undersigned. Yet, once this reportedly readily available information is promptly produced,

further inquiry will be needed into each such claimed customer, such as relevant emails and

communications of all such customers, and identification of contact persons at such customers

for possible subpoenae. All of this critical discovery is being thwarted by the Barksdale Parties'

delays.

---

[6]     As for the actual customer information that was produced on April 14, 2021, the
undersigned further conferred with Attorney Homans about it, because it was confusing. A copy
of the correspondence pertaining to that is attached as Exhibit 11. Attorney Homans' response to
the undersigned trying to clear up and memorialize that confusion and how it was sorted out is in
Exhibit 11 as well. All it does is further confuse the matter. Of course, the further production
followed on May 6, 2021, now with seemingly corrected information versus that produced on
April 14, 2021, but still confusing.

Notably, Wayne testified at his deposition that in February 2020, he had 35 employees in Massachusetts, including Elizabeth, and in June 2020, he only re-hired 4 of them, and none of them were hired to replace Elizabeth or replace her experience or leadership.  Instead, they paid someone from California, Brad Eells, to occasionally come to Boston.  Brad Eells emails have been requested as a result.

This information should have been produced and revealed early on, particularly given Interrogatory No. 7 seeking information about employees rehired during or after the layoff; yet Attorney Homans claimed there was no such relevant information, leading one to assume that no one had been rehired. (See Interrogatory No. 7)  Among the four employees rehired was Mo Ehtasham.  Thus, Ehtasham's emails with customers have been requested, and both Ehtasham's and Eells depositions have been/will be noticed.

This Court's intervention is requested to ensure a complete and prompt production and supplementation of discovery in all of these respects, so that even these two new upcoming depositions take place with a thorough production in front of the undersigned, and not something that requires later follow-up.

Indeed, even something as fundamental as text messages between Wayne, Susan and Belle that pertained to claims and defenses in the case and were called for in Request No. 2 were something Attorney Homans stated on April 30, 2021, after Jeff Williams' deposition, that he would "endeavor to search for". (See Exhibit 12)  Notably, however, when those text messages were eventually produced on the eve of Wayne's deposition, there were substantial pages missing.  Attorney Homans represented on the record at Belle's deposition that they were removed for lack of relevance.  Respectfully, the relevance should be determined by

Elizabeth/Jeff and this court should order all missing pages produced, as memorialized in the undersigned's May 11, 2021 email. (See Exhibit 13 hereto)

All of these matters demonstrate that "good faith" representations that further discovery is being searched for, and/or may be coming is not in good faith. It is instead being implicitly shown to be an effort to delay and ultimately tire out counsel and thwart relevant discovery. Further, it is explicitly being done in the context of drawing out concessions and compromises and then claiming "waiver."

In short, a number of items arose at Wayne's deposition (May 7), Belle's deposition (May 11), and Susan's deposition (May 13) that plainly revealed there are relevant and responsive materials that need to be produced. (See Exhibit 14 and Exhibit 15) They must be ordered produced promptly under the Court's supervision and Wayne, Belle's and Susan's deposition should be Ordered reconvened promptly thereafter.

Neither Elizabeth nor Jeff have any desire to extend discovery more than the 30 days it has already been agreed to be extended, and this Court has So Ordered. They have long been awaiting their relevant discovery, the delays have been substantial, and the undersigned proceeded with the initial questioning at the Barksdale Parties' depositions in order to help narrow the field and determine if any other relevant discovery was missing. Further delays, promises to "search" or claims of irrelevance or overbreadth are now by the wayside.

This Court intervention is requested on the matters raised in those post-deposition letters and so that Attorney Homans may answer to the Court about them without the further opportunity to delay and obfuscate these matters. Moreover, lest there be any doubt on the part of Attorney Homans, this Court should Order that Wayne, Belle and Susan must reconvene for their continued depositions promptly once a full document production is established.

## CONCLUSION

For the reasons above, this Motion to Compel should be granted and Plaintiffs should be sanctioned with (a) paying for the costs and fees associated with making this motion, and (b) paying for the ongoing costs and fees to review the additional documents, reconvene, take, and pay for the continued depositions of Wayne, Susan and Belle.

Respectfully submitted,

**ELIZABETH HOCKMEYER WILLIAMS
AND E-LLUMINATIONS**
By their counsel,

Dated: May 14, 2021

*/s/ Jeffrey M. Rosin*
Jeffrey M. Rosin, Esq. (BBO #629216)
Kenton J. Villano, Esq. (BBO #685959)
O'HAGAN MEYER, PLLC
111 Huntington Avenue, Suite 2860
Boston, Massachusetts 02199
(617) 843-6800
jrosin@ohaganmeyer.com
kvillano@ohaganmeyer.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 14, 2021, a true copy of the above document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties who have appearances as of the time of this filing by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey M. Rosin*
Jeffrey M. Rosin, Esq.

## <u>LOCAL RULE 37.1 CERTIFICATE</u>

The undersigned certifies that, as exemplified by Exhibits 8 and 10-14 herewith, the undersigned has attempted to confer with counsel for the Barksdale Parties.  Court intervention is requested to specifically address the Barksdale Parties' claims on the record at depositions that further discovery has been waived, that discovery requests that were previously agreed to be narrowed cannot be reopened despite the testimony of the Barksdale Parties' witnesses, and that the continued depositions of Wayne Barksdale, Susan Sheridan and Belle Lawrence have been waived.

/s/ *Jeffrey M. Rosin*
Jeffrey M. Rosin, Esq.
