**EXHIBIT 14**

## Jeff Rosin

**From:** Jeff Rosin
**Sent:** Thursday, May 13, 2021 3:16 PM
**To:** Michael Homans
**Cc:** Lauren Bressman (lbressman@ohaganmeyer.com); Carol Feather; Lauren Bressman (lbressman@ohaganmeyer.com); Kathryn Vassall
**Subject:** RE: Follow-up on discovery matters raised at Wayne Barksdale's deposition
**Attachments:** WILL05378-WILL05427.pdf

Michael:

To follow up on the matters noted during Ms. Sheridan's deposition and further to your notes below, please note the following, and I require your prompt response and conference. I believe you have intentionally obfuscated discovery matters and withheld relevant documents, so please be advised that, pending your response, we will be moving to compel and for sanctions.

1. Ms. Sheridan testified today that she trained the salespeople at the New England office, including Elizabeth. Any documents showing this are certainly relevant to the issue of Ms. Sheridan's supervisory authority (and thereby authority to terminate Elizabeth, an issue you have disputed in this case) and are clearly responsive. Please confirm you will produce any and all training materials, drafts, and updates for any and all trainings given to the staff of the New England office from August 2018 to March 2020. These are plainly documents "relevant to claims and defenses." (See Rule 26 and multiple discovery requests)

2. Ms. Sheridan also testified that, on a weekly basis, she held sales meetings/calls where she commonly gave directives and deliverables to salespeople, including Elizabeth, via email and often with attachments. Any and all such emails were apparently provided to you by Ms. Sheridan. Yet, they were not produced, all the while you have taken the position that Ms. Sheridan was not Ms. Williams' supervisor. Please confirm you will produce all of these documents, all of which are relevant discovery to Ms. Sheridan's supervisory authority, promptly. Again, these are plainly documents "relevant to claims and defenses" in the case. (See Rule 26 and multiple discovery requests)

3. Similarly, any and all other emails between Ms. Sheridan and Elizabeth, which she said was sent, including at least one in April 2020, which show any kind of direction, help, guidance, control, supervision or authority in relationship to New England, sales persons and/or Ms. Williams, are clearly relevant and responsive to the same issue of Ms. Sheridan's supervisory authority. They should have already been produced as well, so please confirm you will produce these documents, again as plainly "relevant to claims and defenses" in the case. (See Rule 26 and multiple discovery requests)

4. Ms. Sheridan testified regarding the May 25, 2020 letter which she indicated was sent to "new" and "active" customers. Ms. Sheridan further testified that it would be quite easy to gather the list of customers to whom the May 25th letter was directed, as well as any responses, including responses Wayne Barksdale himself received. All of these materials should also be produced, as they are plainly relevant to you (a) your clients' claim of harm by my clients, (b) mitigation by your clients, and (c) customer responses and preferences thereafter (i.e., the ultimate issue of "causation" on damages). Please confirm this material will be promptly produced.

5. Produce Ms. Sheridan's email dividing the "list of New England customers" between Mo, Lynn and Liz, as she testified today, which is also relevant to (a) your clients' claim of harm by my clients, (b) mitigation by your clients, and (c) customer responses and preferences thereafter (i.e., the ultimate issue of "causation" on damages). Please confirm this material will be promptly produced.

6. Ms. Sheridan testified she could readily retrieve from the "Star" database which customers re-signed with the company (from New England) in the September 2020 to initial months into 2021, including to the present. For the same reasons in 4 and 5 above, this material must be produced.

Additionally, in the course of the depositions, and my comments that your clients have not produced the emails from their system that my clients produced (e.g., emails to Jeff Williams pertaining to work he performed), you claimed you did not do so because my clients had not produced back to you Elizabeth Williams' texts with Wayne Barksdale. Ms. Williams' texts do not go as far back as Mr. Barksdale's, but nonetheless, I produce them herewith, Bates Numbers WILL05378-05427. Please note all these text messages are duplicative of your production. *See* BARKSDALE – EHW 000551-82. The problem with your corresponding failure to produce your clients' emails pertaining to Jeff Williams' and Elizabeth Williams' unpaid work is that there are emails by and between others (e.g., Penny O'Donnell and others) that would reference, for example, Jeff Williams' work and what Jeff Williams was doing for the company. You must search for any and all such documents from the relevant custodians (those who the deponents testified would work with Jeff Williams post-resignation, or those in New England during the layoff) that will show that Jeff Williams provided services for the company post-resignation regularly, and Elizabeth Williams performed services while on layoff.

As I mentioned during today's deposition, I am frustrated by your conduct when conferring and your insistence that either (a) our requests are overbroad, or (b) there are no more relevant documents. The depositions of your clients have each revealed I have not been given all of the fundamental documents and evidence we requested as far back as December, or that were due under Rule 26 and that are relevant to this matter. Please advise as to your availability to confer over all of these outstanding discovery matters.

Thank you for your continued attention.

Jeffrey M. Rosin, Esq.
jrosin@ohaganmeyer.com
Managing Partner – Boston Office
111 Huntington Avenue | Suite 2860 | Boston| Massachusetts | 02199
PH 617.843.6800 |  DIR 617.843.6801 | FX 617.843.6810 | C: 617.571.8024

O'HAGAN MEYER
ATTORNEYS + ADVISORS

Alexandria, VA • Boston • Charlotte • Chicago • Detroit • Los Angeles • San Francisco
Orange County, CA • Philadelphia • Richmond • Washington D.C. • Wilmington, DE

**From:** Jeff Rosin
**Sent:** Tuesday, May 11, 2021 3:19 PM
**To:** Michael Homans <mhomans@homanspeck.com>
**Cc:** Lauren Bressman (lbressman@ohaganmeyer.com) <lbressman@ohaganmeyer.com>; Carol Feather <cfeather@homanspeck.com>; Lauren Bressman (lbressman@ohaganmeyer.com) <lbressman@ohaganmeyer.com>; Kathryn Vassall <kvassall@ohaganmeyer.com>
**Subject:** FW: Follow-up on discovery matters raised at Wayne Barksdale's deposition

Michael
Attached is my April 30, 2021 email. Where do you see the 4 search terms you note below? You'll readily see that the request is for: "the texts should be evaluated for references to anything in New England, Elizabeth and/or Jeff, that implicates claims or defenses in this matter, including without limitation, Ms. Sheridan's authority, management and control, and Mr. Barksdale's treatment of Elizabeth and/or Jeff."

Jeffrey M. Rosin, Esq.

2

jrosin@ohaganmeyer.com
Managing Partner – Boston Office
111 Huntington Avenue | Suite 2860 | Boston| Massachusetts | 02199
PH 617.843.6800 | DIR 617.843.6801 | FX 617.843.6810 | C: 617.571.8024

# O'HAGAN MEYER
ATTORNEYS • ADVISORS

Alexandria, VA • Boston • Charlotte • Chicago • Detroit • Los Angeles • San Francisco
Orange County, CA • Philadelphia • Richmond • Washington D.C. • Wilmington, DE

**From:** Michael Homans <mhomans@homanspeck.com>
**Sent:** Tuesday, May 11, 2021 3:09 PM
**To:** Jeff Rosin <jrosin@ohaganmeyer.com>
**Cc:** Carol Feather <cfeather@homanspeck.com>; Lauren Bressman <lbressman@ohaganmeyer.com>; Kathryn Vassall <kvassall@ohaganmeyer.com>
**Subject:** [EXTERNAL] Re: Follow-up on discovery matters raised at Wayne Barksdale's deposition

Jeff,

See my preliminary responses below.

In addition, please have your clients complete their incomplete discovery, which goes to the heart of the case – including:

(1) Elizabeth Williams' iCloud backup on her Hockmeyer with Barksdale phone that you refuse to produce. It is not an elective item on your part, this is directly relevant and discoverable information that belonged to HWB and documents what was on her phone that she deleted and wiped clean before returning to HWB. Her prior attorney assured us it would be preserved and yet you refuse to produce it. If there is highly personal information not related to this case, you can mark it attorneys' eyes only, but you do not have a basis to block production of Barksdale's information from its own phone.

(2) All of the emails of her May 12 email blast to HWB customers under the "Elizabeth.hockmeyerstudios" email, and the customer/contact list used to send it. Both of your clients admitted that she drafted and sent the emails. That sent-and-response set of emails is accessible to your clients and only your clients. She does not get to selectively produce the emails she wants, we are entitled to them all. Please produce all.

See below for preliminary responses **in bold** on these (many of which have been addressed in prior responses).

Michael



Michael Homans
**HomansPeck, LLC**
*City*: 1600 John F. Kennedy Blvd., Suite 520, Philadelphia, PA 19102
*Suburban*: 134 N. Wayne Ave., Suite 300, Wayne, PA 19087
W: (215) 419-7477     M: (610) 420-8165
www.homanspeck.com

This email may contain confidential and privileged attorney-client communications. If you receive this email in error, please notify the sender immediately and do not use or disclose any information contained in the message.

**From:** Jeff Rosin <jrosin@ohaganmeyer.com>
**Date:** Tuesday, May 11, 2021 at 2:29 PM
**To:** Michael Homans <mhomans@homanspeck.com>
**Cc:** Carol Feather <cfeather@homanspeck.com>, Lauren Bressman <lbressman@ohaganmeyer.com>, Kathryn Vassall <kvassall@ohaganmeyer.com>
**Subject:** RE: Follow-up on discovery matters raised at Wayne Barksdale's deposition

Michael:

Following up further and matters noted today at Ms. Lawrence's deposition, please note:

1        Item 2 below should also reference the EAHW@hockstudio.com email address as well.  The same request is made for emails to/from that address in the period described in item 2 below. **Your clients deleted all emails to and from this email account, as noted in the Amended Complaint and in other communications. If anyone has these documents, it is your client – from massive copying of HWB information on and around May 12, as documented in their text messages to each other.  Please produce the EAHW@ emails from the layoff and May, 2020. Barksdale does not have them due to your clients' wrongful confuct.**

2.        Ms. Lawrence testified today that Mr. Eells email changed from a "pictures with class" email address (or added a new New England email address) at some point after Ms. Williams' May 7, 2020 termination.  Thus, the emails referred to in point 3 below should include that email address as well.  Further, for the avoidance of any doubt, item 3 below refers to New England customers and prospects. It does not refer to California or other locations where Mr. Eells or Mr. Ehtasham may have emailed non-New England customers and/or prospects.  **See below.**

3.        On the subject of New England customers and prospects, Mr. Lawrence testified today that she could readily pull from the "Star" database what customers were customers of the company in 2018, but not customers of the company in 2019, and/or not customers of the company in 2020. Please produce those documents promptly. **Jeff, not sure what this is – a new document request?  The time to make document requests is expired.  We have produced responsive information as to all New England customers, and you and I thoroughly discussed these issues and came to agreement on what was produced, several weeks ago.  An issue in this case is what customers your client improperly solicited and took, not details as to all of Barksdale's clients.  We produced overall customer totals for each year, including specific information as to customers we know at this point she improperly solicited. Per the request above in 1, once you produce the full documents and disclosures of the clients she solicited, then we can determine if additional details from Barksdale are needed.**

4.        Finally, as I mentioned at today's deposition, there were a number of pages missing from Ms. Lawrence's text messages that were not produced.  I list them below. **And as I explained to you at the deposition today, Jeff, your requests as to text messages between Belle Lawrence, Wayne Barksdale and Susan Sheridan were expressly limited to references to Elizabeth, Jeff, JCW Consulting and E-lluminations (see Williams Doc. Req. No. 2, and April 30, 2021 email to me from you).  That is what we searched, and that is what we produced.  You don't get to change the request after the fact.  The remaining text messages have no relevance to this case and are not responsive to any request you have made.**

    A.  In so doing, I note that, of the 125 pages of Belle Lawrence's text messages, only 26 pages were produced.  Based on the time periods where pages were removed, and the sheer volume of documents missing, we request that you either produce all 125 pages.  There was no agreement to limit any such texts in the highly relevant 2018-2020 period of time or to limit the searching of text to "4 search terms" as you claimed on the record today.  **See above. You are mistaken or willfully ignoring your own request and our prior agreements (e.g., your Request 2 is expressly limited to "from August 2018 to the present").  Please do your homework before sending these out.**

a. On Bates Numbers 989 and 1007, there is a reference to Page 3 of 125. Where are pages 1 and 2?

b. Above Bates Number 1008, there is a reference to Page 5 of 125. Where is page 4?

c. Above Bates Number 990, there is a reference to Page 9 of 125. Where are pages 6 through 8?

d. Above Bates Number 991, there is a reference to Page 14 of 125. Where are pages 10 through 13?

e. Above Bates Number 992, there is a reference to Page 21 of 125. Where are pages 15 through 20?

f. Above Bates Numbers 993, 994, and 1009 there are references to Pages 22, 23 and 25 of 125. Where is page 24?

g. Above Bates Number 995, there is a reference to Page 26 of 125. Where are pages 27 through 30?

h. Above Bates Number 1010, there is a reference to Page 31 of 125. Where are pages 32 through 35?

i. Above Bates Numbers 1011 and 1012, there are references to Pages 36 and 37 of 125. Where are pages 38 and 39?

j. Above Bates Numbers 1013 and 1014, there are references to Pages 40 and 41 of 125. Where are pages 42 through 47?

k. Above Bates Number 1015, there is a reference to Page 48 of 125. Where are pages 49 through 55?

l. Above Bates Numbers 1016 and 1017, there are references to Pages 56 and 57 of 125. Where are pages 58 through 68?

m. Above Bates Numbers 996, 1018, and 1019, there are references to Pages 69, 71, and 72 of 125. Where is page 70?

n. Above Bates Numbers 1020 and 1021, there are references to Pages 74 and 75 of 125. Where is page 73?

o. Above Bates Number 997, there is a reference to Page 97 of 125. Where are pages 76 through 96?

p. Above Bates Number 998, there is a reference to Page 100 of 125. Where are pages 98 and 99?

q. Above Bates Number 999, there is a reference to Page 121 of 125. Where are pages 101 through 120?

r. Above Bates Number 1000, there is a reference to Page 125 of 125. Where are pages 122 through 124?

s. Above Bates Number 1001, there is a reference to page 1 of 16. Where are the remaining 15 pages?

B. I further note that there are several hundred pages are missing from text communications between Wayne Barksdale and another person. Indeed, it appears as though 5 of the 795 pages of text messages between Wayne and this person were selectively produced. Given the context of the slim selection of documents that were produced, it is clear that documents falling within the scope of relevant discovery have been withheld. For example:

a. Above bates number 1002, there is a reference to page 2 of 795. Where is page 1?

b. Above bates number 1003, there is a reference to page 261 of 795. Where are pages 3 through 260?

c. Above bates number 1004, 1005, and 1006, there is a reference to pages 262, 263, and 270 of 795. Where are pates 264 through 269?

d. No other text messages from Wayne Barksdale have been produced. Where are pages 271 through 795?

**Same responses, Jeff. Please do your homework before wasting our clients' time and money with these baseless requests.**

Thank you for your attention.

**From:** Jeff Rosin
**Sent:** Monday, May 10, 2021 7:57 AM
**To:** Michael Homans <mhomans@homanspeck.com>
**Cc:** Carol Feather <cfeather@homanspeck.com>; Lauren Bressman (lbressman@ohaganmeyer.com) <lbressman@ohaganmeyer.com>; Kathryn Vassall <kvassall@ohaganmeyer.com>
**Subject:** Follow-up on discovery matters raised at Wayne Barksdale's deposition

Michael,

Thank you for your email Friday regarding the information we requested/questions for Bates 200, 1003 and 1020 from your clients' production. We will await further information from you on those. I note a few areas for additional follow-up from Friday's deposition.

1. Mr. Barksdale stated that he has not searched for responsive emails in his Gmail account. Please confirm you will run a search on this email and produce any and all responsive documents from his Gmail account.

2. Following up on prior communications, we believe that the reasons to produce emails to/from the elizabeth@hockstudios.com address have been made more critical by the deposition. Any and all emails sent by or to such email from the time of Ms. Hockmeyer's layoff in March and through May 7 demonstrate will demonstrate her work on behalf of the company. None should be held back. All are relevant. Please produce the entire email inbox and sent box. Further, any and all documents from or to that email address after May 7, 2020 between the company and any customer or prospect should be produced, as they are highly relevant to any assertion of damages and our arguments pertaining to mitigation of damages. Thus, please produce any and all emails from or to that same address with any customer or prospect. Upon information and belief, that email address has been affirmatively utilized by the company (Brad Eells and others) to communicate with customers, or to gather customer communications for a response through another email, since May 2020.

3. Any and all emails between Brad Eells and any customer or prospect and Mo Ehtasham and any customer or prospect that post-date May 7, 2020 are also highly relevant to dispute the damages your clients claim in this case. These must be produced as well, and, at a minimum, they are called for in Request Nos. 5, 6, 10, and 11.

4. Bates Page 139 in your clients' production shows a number of attachments. It is unclear where these attachments are otherwise found in your clients' production. Kindly identify the Bates numbers of the attachments. If they have not been produced, please produce them.

5. Mr. Barksdale testified that he can readily identify the customers in New England his company worked with before acquiring Hockmeyer Studios in August 2018 and the customers in New England that were added to the databases after August 2018. Please confirm you will produce this information promptly. It is clearly relevant to your claim that my clients' actions harmed your clients' business.

Thank you for your continued attention to this matter.

Jeffrey M. Rosin, Esq.
jrosin@ohaganmeyer.com
Managing Partner – Boston Office
111 Huntington Avenue | Suite 2860 | Boston| Massachusetts  | 02199
PH 617.843.6800 |  DIR 617.843.6801 | FX 617.843.6810 | C: 617.571.8024



O'HAGAN MEYER
ATTORNEYS & ADVISORS

Alexandria, VA • Boston • Charlotte • Chicago • Detroit • Los Angeles • San Francisco
Orange County, CA • Philadelphia • Richmond • Washington D.C. • Wilmington, DE