# EXHIBIT A

## ASSET PURCHASE AGREEMENT

This is an Agreement, entered into on August 17th, 2018, by and among BSP New England LLC., a Pennsylvania business corporation, ("Buyer"); Hockmeyer Studios, Inc. ("Seller"); Brian and Ann Hockmeyer, individual resident of Massachusetts ("Owner"). Seller and Owners are sometimes referred to in this Agreement as the "Selling Parties."

### Background

I.  Both Buyer and Seller are engaged in the photography business (the "Business").

II. Owners own all of the issued and outstanding stock of Seller.

III. Buyer desires to purchase certain customer lists and other assets delineated in Paragraph 1 hereinbelow from Seller on the terms and conditions of this Agreement.

NOW, THEREFORE, acknowledging the receipt of adequate consideration and intending to be legally bound, the parties hereby agree as follows:

1. **Purchase and Sale of Assets.** Buyer agrees to purchase from Seller, and Seller agree to sell, assign, transfer, convey and deliver to Buyer all of Seller's right, title, and interest in and to the following assets (all assets being purchased and sold pursuant to this Agreement as set forth below may be referred to collectively as the "Assets") free and clear of all liabilities, liens, encumbrances, financing statements, security interests, obligations, mortgages and claims of any kind:

    1.1. **Customer Lists.** A list of all customers for whom Seller has performed photography services within the last five (5) years, including but not limited to schools, yearbooks, commencement, dance studios, sports leagues, and marching bands for whom Seller has performed photography services ("Customers").

    1.2. **Equipment.** All equipment and other tangible assets with the exception of the exclusions listed in paragraph 1.6 (the "Equipment").

    1.3. **Contracts.** The rights of Seller in any contracts with Customers (the "Customer Contracts").

    1.4. **Intellectual Property.** All copyrights, trademarks, trade dress, patents, inventions (even if not reduced to patents), rights under non-competition agreements, and other intellectual property used by Seller in the operation of the business.

    1.5. **Business Records.** All business records and papers of Seller relating to Customers, including but not limited to the purchasing history of each Customer.

BARKSDALE - EHW 000001

1.6   **Exclusions.** Notwithstanding the foregoing, the Seller is <u>not</u> selling and the Buyer is <u>not</u> purchasing, any tangible or intangible properties, assets or rights of the Seller not specifically included in Paragraphs 1.1 through 1.5. Without limiting the foregoing, there shall not be sold, assigned, transferred or delivered hereunder any of the following assets of the Seller:

1.6.1. Seller's cash, cash equivalents, bank deposits and marketable securities (the "Cash");

1.6.2. All trade accounts receivable, notes receivable and miscellaneous receivables of the Seller prior to the closing (as defined below);

1.6.3. All claims and rights of Seller to Federal, state and local income tax refunds, credits and benefits;

1.6.4. The Seller's **corporate** minute books, stock records, and income tax returns;

1.6.5. Indigo Press;

1.6.6. Binding Equipment;

1.6.7. Ford Fiesta; and

1.6.8. Dodge Caravan.

2. **Seller's Liabilities.**

Buyer shall not assume any liabilities of Seller of any nature.

3.   **Purchase Price and Payment.**

3.1.   **Purchase Price**

3.1.1. **Commission on Other Revenue (Pre-Paid).** Buyer shall pay to Seller an amount equal to ten percent (10%) of the Gross Collections of Buyer received during the first year period, 12% the second and 10% the third year for with respect to sales to Regular Customers, as specified on addendum, without regard to when such sales were made. The 4th year the buyer will offer a basket year for the accounts that have been lost due to errors in production. The basket year pays the Seller an amount equal to 5% of the Gross Collections of the last year's collected revenue on the Seller's accounts.

BARKSDALE - EHW 000002

3.1.2. **Definitions.** The following definitions shall apply for purposes of this Agreement:

(a) "Commission Period" means the period of three (3) years immediately following Closing.

(b) "Gross Collections" means the collections (not billings) of Buyer, net of sales commissions and taxes, and refunds. (Initial picture only)

3.2. **Payment.** Buyer shall make the following payments to Seller:

3.2.1. Payments will be a draw vs future commission structure made monthly and determined by the previous year's gross sales. A settlement report on or before August 31st each year will be provided to the Seller to determine additional commission earned for the fiscal year August 1st to July 31st and future draw.

3.3. Within thirty (30) days following the end of the Commission Period, Buyer shall pay Seller the difference between the aggregate payments to date and the aggregate amounts due pursuant to section 3.1.1 and 3.1.2(a) during the entire Commission Period as specified in the purchase price. Subject to adjustment as provided herein, the Purchase Price shall be allocated among the Assets as follows for tax purposes:

3.3.1. **Equipment.** There shall be allocated to the Equipment, one percent (1%) of the Purchase Price.

3.3.2. **Assumed Contracts.** There shall be allocated to the Equipment, one percent (1%) of the Purchase Price.

3.3.3. **Restrictive Covenants.** There shall be allocated to the Restrictive Covenants one (1%) of the Purchase Price.

3.3.4. **Goodwill, Etc.** The balance of the Purchase Price shall be allocated to the goodwill of Seller and the Business, and all other assets not enumerated above.

3.4. **Reports.** Buyer shall provide Seller with monthly reports showing the calculation of the amounts described in sections 3.1 and 3.2 in reasonable detail.

3.5. **Audits.** Seller and its representatives may, at its own cost and expense and upon reasonable notice to Buyer no more than once annually, audit the books and records of Buyer for the limited purpose of confirming Buyer's calculation of the amount due to Seller hereunder. If Seller's audit reveals a shortfall in Buyer's payment calculation of more than ten percent (10%) for any year, then Buyer shall bear Seller's reasonable audit costs, not to exceed Five Thousand Dollars ($5,000). Deficiency payments will be made within 30 days of notice.

BARKSDALE - EHW 000003

4. **Representations and Warranties of Selling Parties.** The Selling Parties hereby jointly and severally make the following representations and warranties to Buyer, each of which shall survive Closing:

   4.1. **Lists.** The lists of Customers and Prospective Customers, as specified on addendum, provided by Seller are accurate and complete.

   4.2. **Conflicts.** Seller does not require the consent of any third party to perform its obligations under this Agreement. Neither the execution nor the performance of this Agreement will breach or violate the terms of any other agreement to which Seller is a party or by which Seller is bound, or breach or violate any order, decree or regulation of any governmental agency, nor is Seller aware of facts which would prevent the performance of the obligations of Seller under this Agreement.

   4.3. **Authorization.** Buyer is legally permitted and has been duly authorized by all corporate action of its directors and shareholders to consummate this Agreement and the transactions contemplated herein.

   4.4. **Contracts.** Seller has provided Buyer with copies of all Customer Contracts. Neither Seller nor any Customer is in breach of any Customer Contract and all Customer Contracts remain in full force and effect.

   4.5. **Binding Nature.** This Agreement is fully valid and binding upon Seller in accordance with its terms, except as may be provided in bankruptcy or similar proceedings.

   4.6. **Litigation.** There are no actions, suits, proceedings, or investigations pending or, to the best of the knowledge of Seller, threatened, in any court or before any governmental agency or instrumentality against Seller relating to the Business, nor is Seller aware of facts reasonably likely to give rise to such actions. No such actions have been concluded or settled within the last three (3) years.

   4.7. **Solvency.** Seller is not insolvent, and will not be rendered insolvent by the transfer contemplated by this Agreement, and Seller will meet its obligations as they become due.

   4.8. **Customer Relationships.** During the eighteen (18) month period immediately preceding the date of this Agreement, Seller has not received notice from any Customer that such Customer intends or is likely to terminate, curtail, or fail to renew its relationship with Seller. To the best of the knowledge of the Selling Parties, Seller is on good terms with all of its Customers, excluding any problems that may arise in the transition period prior to Closing.

   4.9. **Misleading Statements.** To the best of the Selling Parties' knowledge, neither this Agreement (including all Schedules) nor any other document or other instrument heretofore

BARKSDALE - EHW 000004

furnished by the Selling Parties to Buyer in connection with the transactions set forth herein contains any untrue representation, warranty or statement of any material fact or, to the best of the knowledge of the Selling Parties, omits to state and/or disclose any material fact and/or circumstance required to be stated and/or disclosed in order to make such representation, warranty, statement, document or other instrument not misleading.

5. **Representations and Warranties of Buyer.** Buyer hereby makes the following representations and warranties to Seller, each of which shall survive Closing:

    5.1. **Authorization.** Buyer is legally permitted and has been duly authorized by all corporate action of its directors and shareholders to consummate this Agreement and the transactions contemplated herein.

    5.2. **Binding Nature.** Buyer has full right and authority to consummate all transactions contemplated by this Agreement, and this Agreement is fully valid and binding upon Buyer in accordance with its terms, except as may be provided in bankruptcy or similar proceedings.

    5.3. **Care of Customers.** Following the Closing, Buyer shall treat the accounts of Customers with no less diligence and care than it treats the accounts of its own customers. For the 1st season Seller, Brian Hockmeyer shall have the responsibility for a smooth transition handling the accounts of Customers if and when needed.

    5.4. **Misleading Statements.** Neither this Agreement (including all Schedules) nor any other document or other instrument heretofore furnished by Buyer in connection with the transactions set forth herein contains any untrue representation, warranty or statement of any material fact or, to the best of Buyer's knowledge, omits to state and/or disclose any material fact and/or circumstance required to be stated and/or disclosed in order to make such representation, warranty, statement, document or other instrument not misleading.

    5.5. **Conflicts.** Buyer does not require the consent of any third party to perform its obligations under this Agreement. Neither the execution nor the performance of this Agreement will breach or violate the terms of any other agreement to which Buyer is a party or by which Buyer is bound, or breach or violate any order, decree or regulation of any governmental agency, nor is Buyer aware of facts which would prevent the performance of the obligations of Buyer under this Agreement.

    5.6. **Litigation.** There are no actions, suits, proceedings, or investigations pending or, to the best of the knowledge of Buyer, threatened, in any court or before any governmental agency or instrumentality against Buyer which would impair Buyer's ability to perform its undertakings herein, nor is Buyer aware of facts reasonably likely to give rise to such actions.

    5.7. **Solvency.** Buyer is not insolvent, and will not be rendered insolvent by the

BARKSDALE - EHW 000005

purchase and payment obligations hereunder, and Buyer will meet such payment obligations as they become due.

6. **Liability Absolute.** A party making a representation or warranty pursuant to sections 4 or 5 shall be liable for the inaccuracy of such representation or warranty even if the other party knew or should have known that the representation or warranty was inaccurate.

7. **Restrictive Covenants.**

   7.1. **Solicitation of Customers.** For a period of five (5) years following the Closing Date, no Selling Party shall initiate contact with any person who is included among the Customers or the Prospective Customers, in an attempt to induce them to purchase products or services offered by Buyer from any person other than Buyer, or to terminate or curtail their relationship with Buyer.

   7.2. **Competition.** For a period of five (5) years following the Closing Date, no Selling Party shall, directly or indirectly, as owner, director, member, manager, officer, employee, consultant, contractor, lender, or otherwise, participate in any photography business within Massachusetts, Rhode Island, Vermont, Connecticut, New Hampshire, Maine

   7.3. **Business Referrals.** If, during the period of five (5) years following the Closing Date, any Selling Party is contacted by any person seeking photography services, such Selling Party shall promptly refer such person to Buyer. Similarly, if during such period any Selling Party becomes aware of business opportunities for photography services, such Selling Party shall promptly notify Buyer. Such restrictions shall not apply if (i) the services requested or the business opportunity involves only a wedding or bar mitzvah, or (ii) (A) the person seeking the services is already a wedding or bar mitzvah customer of Seller, and (B) the services requested are for personal photography services not involving schools, sports teams, yearbooks, or other business lines of Buyer.

   7.4. **Remedies.** The Selling Parties acknowledge that an actual or threatened breach of the provisions of this section will cause Buyer great and irreparable injury and damage, which loss cannot be reasonably or adequately compensated in damages in any action at law. Accordingly, Buyer shall be entitled, in addition to any contractual rights or other remedies it may have at law, to the remedies of injunction, specific performance and other equitable relief for such an actual or threatened breach; provided that in no event shall the assertion or existence of equitable remedies be construed under this Agreement as a waiver of any contractual rights which a party may have hereunder or for damages or any other remedy at law. Any period of restriction set forth in this section shall be extended for a period of time equal to the duration of any breach or violation hereof.

   7.5. **Notification.** Buyer may notify any person as to the existence and provisions of this section.

BARKSDALE - EHW 000006

7.6. **Modification of Covenants; Enforceability.** In the event that any provision of this section is held to be in any respect an unreasonable restriction upon any person, then the court so holding may modify the terms thereof, including the period of time during which it operates or the geographic area to which it applies, or effect any other change to the extent necessary to render this section enforceable, it being acknowledged by the parties that the representations and covenants set forth in this section are of the essence of this Agreement.

7.7. **Survival.** The restrictions set forth in this section shall survive Closing.

8. **Closing.**

8.1. **Date and Time.** The closing for the transactions described herein ("Closing") shall take place via email and fax on Aug 17, 2018 or such other date as the parties shall mutually agree upon (the date of actual closing is referred to herein as the "Closing Date").

8.2. **Conditions.** Buyer shall not be obligated to close the transactions described in this Agreement unless all of the following conditions shall have been met:

8.2.1. All of the representations and warranties of Seller set forth in section 4 shall be true as of the Closing Date, and Seller shall have delivered a certification to that effect.

8.2.2. Seller shall have fully complied with all applicable "bulk sale" laws.

9. **Deliveries at Closing.** At Closing, Seller shall deliver to Buyer:

9.1. **Instruments of Transfer.** Such instruments of transfer as Buyer may reasonably request.

9.2. **Contracts.** Original copies of all Customer Contracts.

9.3. **Release of Liens.** Properly executed UCC-3 forms and/or other instruments required to eliminate at Closing any and all liens and encumbrances on the Assets.

9.4. **Other Documents.** Such other documents and instruments as may be reasonably necessary or appropriate to carry out the transactions described in this Agreement.

10. **Indemnifications.**

10.1. **Indemnification by Seller.** Seller shall defend, hold harmless, and indemnify Buyer and its employees, officers, and members against all liabilities, damages, losses, claims, judgments and expenses (including reasonable attorneys' fees and related costs) arising from (i) the conduct of Seller's business on or prior to the Closing Date; or (ii) a breach of any of the

BARKSDALE - EHW 000007

covenants, agreements, warranties, or representations of Seller contained in this Agreement.

10.2. **Indemnification by Buyer.** Buyer shall defend, hold harmless, and indemnify Seller against all liabilities, damages, losses, claims, judgments and expenses (including reasonable attorneys' fees and related costs) arising out of (i) the conduct of Buyer's business subsequent to the Closing Date; or (ii) a breach of any of the covenants, agreements, warranties or representations of Buyer contained in this Agreement.

10.3. **Notice of Claim.** Upon receipt of a third party claim or demand for which a party is entitled to indemnification, or in any other event where a party believes it is entitled to indemnification, such party (the "Indemnified Party") shall (i) notify the party required to provide such indemnification (the "Indemnifying Party") in writing of the nature of the claim and the names and addresses of the persons involved in or having an interest in such claim; (ii) furnish the Indemnifying Party with all documents and information within the possession, custody, or control of the Indemnified Party and relating to such claim; and (iii) cooperate with the Indemnifying Party should the Indemnifying Party choose to defend such claim pursuant to section 10.4.

10.4. **Defense of Claim.** Upon receipt of the notice described in section 10.3, the Indemnifying Party shall be entitled to exercise control of the defense and settlement of any third party claim giving rise to the claim to indemnification, provided that (i) such defense and settlement shall be at the sole cost and expense of the Indemnifying Party; (ii) the Indemnifying Party shall notify the Indemnified Party of its intention to assume control of the defense and settlement within a reasonable time (and in no event more than 30 days) following its receipt of the notice described in Section 10.3; (iii) the Indemnifying Party shall be permitted to control the defense of the claim only if the Indemnifying Party is financially capable of such defense and engages the services of a qualified attorney, each in the reasonable judgment of the Indemnified Party; (iv) the Indemnifying Party shall not thereafter withdraw from control of such defense and settlement without giving reasonable advance notice to the Indemnified Party; (v) the Indemnified Party shall be entitled to participate in, but not control, such defense and settlement at its own cost and expense; (vi) before entering into any settlement of the claim, the Indemnifying Party shall be required to obtain the prior written approval of the Indemnified Party, which shall be not unreasonably withheld, if pursuant to or as a result of such settlement, injunctive or other equitable relief would be imposed against the Indemnified Party or its assets or business; and (vii) the Indemnifying Party will not enter into any settlement of any such claim without the prior written consent of the Indemnified Party, unless the Indemnifying Party agrees to be liable for any amounts to be paid to the third party pursuant to such settlement and satisfies to the reasonable satisfaction of the Indemnified Party its ability to satisfy such liability.

10.5. **Time Limitation.** No action for indemnification based on an alleged breach of representations or warranties pursuant to subparagraphs 10.1(ii) and 10.2(ii) of this section shall be effective unless the notice described in Section 13.2 is received by the party from whom indemnification is sought within two (2) years following the Closing Date.

BARKSDALE - EHW 000008

10.6. **Right of Offset.** In the event Buyer becomes entitled to indemnification from Seller pursuant to this section, Buyer may offset the amount of such indemnification against any other amounts due from Buyer to Seller.

10.7. **Interest.** Upon final determination of the amount and liability for any claim under this section, whether by judgment of any court or agreement between the parties, the responsible party shall pay the amount necessary to fully discharge such claim within ten (10) days. Any amounts not paid during such period shall bear interest at an annual rate equal to two percent (2%) above the highest prime rate of interest published in The Wall Street Journal from time to time.

11. **Transition of Customers.** Following the Closing Date, the Selling Parties shall use their best efforts to smoothly transition Customers from Seller to Buyer.

12. **Work in Process.** Seller shall complete all orders for which work has begun before Closing, and shall be entitled to payment for all such orders. Orders for which work has not begun before Closing shall be transferred to Buyer.

13. **Miscellaneous.**

13.1. **Amendments; Waivers.** No amendment, modification, or waiver of any provision of this Agreement shall be binding unless in writing and signed by the party against whom the operation of such amendment, modification, or waiver is sought to be enforced. No delay in the exercise of any right shall be deemed a waiver thereof, nor shall the waiver of a right or remedy in a particular instance constitute a waiver of such right or remedy generally.

13.2. **Notices.** Any notice or document required or permitted to be given under this Agreement may be given by a party or by its legal counsel and shall be deemed to be given (i) one day after the date such notice is deposited with a commercial overnight delivery service with delivery fees paid, or (ii) on the date transmitted by facsimile or electronic mail with transmission acknowledgment, to the following addresses or such other address or addresses as the parties may designate from time to time by notice satisfactory under this section:

| Buyer | Barksdale School Portraits, LLC Attention: Wayne T. Barksdale<br>380 Turner Industrial Way<br>Aston, PA 19014<br>FAX (610) 494-5946<br>Email: wbarksdale@barksdalephoto.com |
|---|---|
| Selling Parties | Hockmeyer Studios, Inc..<br>Brian and Ann Hockmeyer |

BARKSDALE - EHW 000009

13.3. **Governing Law.** This Agreement shall be governed by the internal laws of Massachusetts without giving effect to the principles of conflicts of laws. Each party hereby consents to the personal jurisdiction of the Commonwealth of Massachusetts, venue of Essex, Delaware courts and agrees that all disputes arising from this Agreement shall be prosecuted in such courts. Each party hereby agrees that any such court shall have in personam jurisdiction over such party and consents to service of process by notice sent by regular mail to the address set forth above and/or by any means authorized by Massachusetts law.

13.4. **Language Construction.** The language of this Agreement shall be construed in accordance with its fair meaning and not for or against any party. The parties acknowledge that each party and its counsel have reviewed and had the opportunity to participate in the drafting of this Agreement and, accordingly, that the rule of construction that would resolve ambiguities in favor of non-drafting parties shall not apply to the interpretation of this Agreement.

13.5. **Payment of Fees.** In the event of a dispute arising under this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, provided that if a party prevails only in part the court shall award fees and costs in accordance with the relative success of each party.

13.6. **Signature in Counterparts.** This Agreement may be signed in counterparts, each of which shall be deemed to be a fully-executed original.

13.7. **Signature by Facsimile.** An original signature transmitted by facsimile shall be deemed to be original for purposes of this Agreement.

13.8. **Assignment.** No party may assign its rights or duties hereunder. Any attempted assignment shall be null and void.

13.9. **No Third Party Beneficiaries.** Except as otherwise specifically provided in this Agreement, this Agreement is made for the sole benefit of the parties. No other persons shall have any rights or remedies by reason of this Agreement against any of the parties or shall be considered to be third party beneficiaries of this Agreement in any way.

13.10. **Binding Effect.** This Agreement shall inure to the benefit of the respective heirs, legal representatives and permitted assigns of each party, and shall be binding upon the heirs, legal representatives, successors and assigns of each party.

13.11. **Titles and Captions.** All article, section and paragraph titles and captions contained in this Agreement are for convenience only and are not deemed a part of the context hereof.

BARKSDALE - EHW 000010

13.12. **Pronouns and Plurals.** All pronouns and any variations thereof are deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

13.13. **Days.** Any period of days mandated under this Agreement shall be determined by reference to calendar days, not business days, except that any payments, notices, or other performance falling due on a Saturday, Sunday, or federal government holiday shall be considered timely if paid, given, or performed on the next succeeding business day.

13.14. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements and understandings.

[Intentionally Blank – Signatures on Following Page]

BARKSDALE - EHW 000011

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

BSP New England LLC

By: _____
Wayne T. Barksdale, President

Corporation name:
Hockmeyer Studios, Inc.

By: _____
Brian Hockmeyer, Owner

By: _____
Ann Hockmeyer, Owner

F:\RW06_18-0514WB P AND S 8-29-18 DOCX

BARKSDALE - EHW 000012

ADDENDUM to Purchase Agreement
Between Wayne Barksdale and Ann & Brian Hockmeyer

1. Seller agrees that the purchase includes the current inventory, 2 Noritsu Dry Printers, 4 Xerox printers, office furniture, all cameras, all photographic lights, stands and backgrounds, computers and all other contents except what is specified in section 1.6 of purchase agreement. Also included are 3 vehicles; Honda Ridgeline, Honda CRV, and Ford F150.

2. Buyer agrees to assume payments for 2 vehicles, the Ford Fiesta and Dodge Caravan until the buyer is prepared to pay off the car loans and assume their ownership before the end of 2018.

3. Buyer agrees to pay the final payment on the mail equipment which is due on Sept. 15th and return the equipment to NeoPost at the end of the lease in November or negotiate a buyout. The final payment is $2500.00

4. Seller retains the 2 leased vehicles, 2017 Mini and 2015 Jeep Cherokee.

5. Buyer agrees to a working capital reimbursement to Hockmeyer Studios for all operating expenses, commencing on August 17, 2018, including but not limited to, payroll, phones, sales tax, payroll tax, shipping, postage, auto expenses, credit card processing fees, check processing fees, and insurance, up to the time the buyer can arrange for conversion to buyer's accounts. Purchases made prior to August 17th that were necessary for fall operations will also be reimbursed.

Brian Hockmeyer _____ Date 8-29-18
Ann Hockmeyer _____ Date 8-29-18
Wayne Barksdale _____ Date 8-29-18