```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   BARKSDALE SCHOOL PORTRAITS, LLC,      )
     d/b/a HOCKMEYER WITH BARKSDALE, and   )
 5   BSP NEW ENGLAND, LLC d/b/a HOCKMEYER  )
     WITH BARKSDALE,                       )
 6                                         )
               Plaintiffs,                 )
 7                                         )   Civil Action No.
          v.                               )   1:20-cv-11393-IT
 8                                         )
     ELIZABETH HOCKMEYER WILLIAMS, and     )
 9   E-LLUMINATIONS,                       )
                                           )
10             Defendants.                 )
                                           )
11   _____

12

13        BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE

14                        MOTION HEARING

15

16

17                    Thursday, June 3, 2021
                          9:57 a.m.
18

19

20

21   John J. Moakley United States Courthouse
     Courtroom No. 9
22   One Courthouse Way
     Boston, Massachusetts
23

24   Robert W. Paschal, RMR, CRR
     Official Court Reporter
25   rwp.reporter@gmail.com
```

1                          **A P P E A R A N C E S**

2

   On behalf of the Plaintiffs:

3

4         HOMANSPECK, LLC
          BY:  MICHAEL D. HOMANS
          134 North Wayne Avenue
5         Suite 300
          Wayne, PA  19087
6         (215) 419-7463
          mhomans@homanspeck.com

7

8         RUBIN AND RUDMAN LLP
          BY:  JEFFREY A. DRETLER
9         53 State Street
          Boston, MA  02109
10        (617) 330-7000
          jdretler@rubinrudman.com

11

12

   On behalf of the Defendants:

13

          O'HAGAN MEYER PLLC
14        BY:  JEFFREY M. ROSIN
          111 Huntington Avenue
15        Suite 2860
          Boston, MA  02199
16        (617) 843-6800
          jrosin@ohaganmeyer.com

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1
2          (In open court at 9:57 a.m.)

3          THE DEPUTY CLERK:  United States District Court is

4    now in session, the Honorable Judge Indira Talwani presiding.

5              This is Case Number 20-cv-11393, Barksdale School

6    Portraits LLC versus Hockmeyer Williams, et al.  Will counsel

7    please identify themselves on the record.

8              MR. HOMANS:  Michael Homans on behalf of the

9    plaintiff, Barksdale School Portraits, BSP New England, and

10   the individual counterclaim defendants.

11             THE COURT:  Good morning.

12             MR. DRETLER:  Good morning, Your Honor.  Jeff

13   Dretler, co-counsel with Attorney Homans.

14             THE COURT:  Good morning.

15             MR. ROSIN:  Good morning, Your Honor.  Jeffrey

16   Rosin for the defendants and counterclaimants.

17             THE COURT:  Good morning.

18             So in accordance with CDC guidelines, if you are

19   fully vaccinated, which means two weeks past your last

20   vaccination, the final vaccination, you may remove your mask

21   if you choose to do so.  You may keep it on if you're more

22   comfortable with that.

23             So we are here on the motion for sanctions brought

24   by the plaintiffs, and that's motion for sanctions 40 --

25   Docket 46.  And I have reviewed the papers.  And I would like

1    to sort of separate out this conversation into two parts.

2              One, is it -- I think there is a question as to --

3    or I'd like to make sure my understanding is correct that

4    there is no dispute that Attorney Rosin made the statements

5    that he is accused of making and, assuming that's the case,

6    to then move on to the question of what are the consequences

7    of that.

8              So let me start with that first thing.  Do I

9    understand correctly, Mr. Rosin, that you do not dispute that

10   those statements were made?

11             MR. ROSIN:  Your Honor, there are certain

12   statements that I don't dispute; however, the overall context

13   of the statements and how they were made is part of what I do

14   dispute.

15             THE COURT:  Okay.  But I'm trying to divide this up

16   to into two pieces.  So my first question is simply, as to

17   the statements, there's no dispute about that, correct?

18             MR. ROSIN:  That's not fully correct, Your Honor.

19   Certain of the statements, yes.  The transcript speaks for

20   itself, and they are -- they are made.  But many of the

21   statements were either potentially not mine or were said in

22   the context of an objection or a comment to Attorney Homans.

23             So in that sense, anything, of course, that the

24   transcript reflects me being -- saying, other than the one

25   that's in error in the initial transcript, would be what I

1    would defer to, Your Honor.

2         THE COURT:  Okay.  So let me just try to figure out

3    exactly what you said there.  I was hoping that by having a

4    neutral transcript made, we could avoid disputes.  However,

5    the -- I'm perhaps spoiled by the use of court reporters who

6    actually carefully go through things.  And I found the

7    transcript, which at times had the wrong individual and at

8    times had things that clearly were erroneous, lacked some

9    reliability.

10         So that got me back to the question of, do I need

11   to listen to each expression in the video?  And so I -- to

12   some degree, I was trying to get my direction from your

13   papers.  And from your papers, I'm not -- I understand that

14   you give context to lots of things, but the actual words out

15   of your mouth, I wasn't clear that you actually disagreed

16   with any as originally presented by the plaintiff.

17         MR. ROSIN:  And, Your Honor, there are a few that

18   are not reflected accurately in the motion.  There are a few

19   that I do not think were mine.  There -- I haven't -- you

20   know, I guess my general viewpoint was, look, you know, I

21   know that this was a difficult deposition.  I know that there

22   were times I muttered.  Okay?  So I guess I don't deny

23   muttering generally sometimes, and I don't deny that that was

24   not perfect lawyering and something I was not supposed to do.

25         But there -- if I go to each of the statements that

1    are alleged, some of them do not accurately reflect what is

2    in there.  And I think my sur-reply -- thank you, Your Honor,

3    for accepting that.  But I think my sur-reply addresses this.

4    For example, I do not recall Item 23, I believe, where it's

5    alleged I said that Ms. Sheridan was a swear word.  I do not

6    recall that at all.

7         I do recall substantial testimony about the

8    actual -- that actual term being a part of questions and

9    answers in that part of the record.  And so I haven't drilled

10   down, but I accept that I made mutterings when that was not

11   the right thing to do as a lawyer.

12        THE COURT:  Okay.  So I think there are -- from

13   what you've said, I may need to go back and drill down to

14   specific -- some of the specific items, but certainly as to

15   the bulk of them, there is no dispute that you made these

16   statements?

17        MR. ROSIN:  Well, okay, Your Honor.  To the extent

18   the transcript is me making a statement, of course, I

19   definitely don't dispute that.

20        THE COURT:  Well, the problem is the transcript is

21   me making the statement, and I'm just trying to figure out if

22   you actually dispute it or whether I need to try to figure

23   out what I'm using as a reliable matter.

24        I do think as -- you know, as a technical matter in

25   determining a record, what a court reporter takes down as

1    correct is the record even if someone has been sitting on the

2    side taping it on their iPhone.  That's the record.  Where

3    you have a noticed deposition, you have two records.  One is

4    this stenography, the stenographic record taken by that

5    stenographer, and the second is the video record taken by the

6    videographer; and so you have both.

7            I was trying to reduce the videography to a written

8    record so I didn't have to replay and replay and replay.  And

9    I don't feel like this third record we've created has any

10   indicia of reliability, unfortunately.

11           So now I'm simply asking you the question as to

12   whether or not -- not what does the transcript show.  I'm

13   just asking you the question, is do you dispute the

14   statements that plaintiff has listed in your brief?  And I

15   think what you're saying is that, as to a few of them, as to

16   some of them, you do and that I can find in your sur-reply.

17           And so then my follow-up question to you was, so we

18   can now move forward, but do you agree that the majority of

19   these statements, you did make these statements?  And then we

20   need to figure out what happens and what's the context and

21   what I'm going to do about that.

22           MR. ROSIN:  Well, I guess, put that way,

23   Your Honor, I've listened to this transcript four times very

24   closely, because a lot of it, when I first saw this, I

25   couldn't recall.  But, of course, I did know that I muttered

1    sometimes.

2          And so, you know, for example, there's one item,

3    35, where I'm alleged to have said something.  And, you know,

4    the -- yes, I said it.  The sound was off in our room.  We

5    couldn't hear Attorney Homans, and it was asked and answered

6    already, and I should not have been speaking out of turn.

7    That was wrong.  But it was not what it's painted to be.

8          So I guess, when you say, Your Honor, do you -- do

9    you dispute the statements, I guess there's both -- there's

10   both a no and a context in there that I -- that I would give

11   Your Honor as the answer.

12         THE COURT:  Okay.  I'm taking that as a no, and now

13   we can move to the context --

14         MR. ROSIN:  Thank you, Your Honor.

15         THE COURT:  -- trying to separate this out.  And so

16   the circumstance that I understand that I have in front of me

17   is that these statements that you refer to as "mutterings,"

18   but these words were made, and now the question is what

19   happens in light of that?  And your arguments are -- it seems

20   to me are primarily directed to why I should not take action

21   against your client.

22         But I'd like to start first with the question of

23   whether I need to take action as to you.

24         MR. ROSIN:  Thank you, Your Honor.  And I'm

25   prepared, Your Honor, for whatever Your Honor decides is the

1    appropriate action to me.  I would actually, though, ask

2    Your Honor to recognize the following context.

3              The -- my client's psychological and emotional and

4    physical state was in a place where I've never been with a

5    client, and she almost didn't make it to the deposition that

6    day.  She had had no food in her system and didn't have food

7    in her system and refused to take any through the day and

8    would only drink water to get herself through the day.

9              She was hospitalized the night afterwards.  We were

10   met in the beginning with what is set forth in our sur-reply

11   and what Your Honor can hear in the first 30 minutes of the

12   video as a very provocative and agitating set of questions.

13   We did try to move for protective order and instruct her not

14   to answer on one of them.  Looking back, I should have moved

15   for a protective order on the entire day.

16             But I knew that my client needed to get through the

17   day.  We had been anticipating the day for a month.  She was

18   just off of vacation.  She is a photographer.  The May season

19   is when she's going to be busy and need to focus on making

20   money.  We needed to get this done at the end of April and

21   hopefully in one day, you know, come the high water.

22             So I love this client.  I care a lot about her.  I

23   care a lot about her husband as well.  I'm wrapped up in what

24   she's endured, and I'm watching what she's enduring.  And

25   it's very hard to watch.  And I know what she's told me she

1    endured for three years, and that's very hard as well.

2         I have reached out to fellow counsel outside my

3    firm considering that perhaps I am too emotionally wrapped up

4    in this case and need co-counsel or substitute counsel to

5    take it from here.  My client is suffering, and I've taken on

6    her emotions.  And that's something that I'm willing to pay

7    whatever price Your Honor thinks is appropriate.

8         But I look at that deposition, 32 hours of it,

9    8 hours four times over, and I say, did -- did the other side

10   get a full and fair deposition?  Did I truly interfere with

11   that?  Did I truly interfere in any way with them getting her

12   truthful and credible answers and getting through that day?

13   And in my defense, Your Honor, I feel like I did not.  I did

14   not.

15        I helped my client and helped her get through the

16   day, and I was not a perfect defender there, by any stretch,

17   but I ask that Your Honor consider that.

18        THE COURT:  So I think the problem I'm having with

19   your response to this whole matter is that, even if I were to

20   accept everything that you're stating recording your client's

21   mental state and difficulties and all of the -- how your

22   motives may not have been misplaced, even if I were to accept

23   all of that, what I'm having a hard time understanding

24   here -- because you're obviously an experienced litigator and

25   an experienced lawyer.

1          And I don't see any acknowledgment from you on how

2     what you may contend you do to help her has, in fact, gravely

3     harmed the matter, where you have placed her in a position in

4     front -- you may believe in your client.  I certainly have

5     been there where you believe in your client.  I understand

6     that.  But this is a case where a neutral person will

7     ultimately -- whether it's a jury or me -- will ultimately be

8     making decisions about this case.

9          And to not recognize that the steps you are taking,

10    purportedly to protect her, are damaging her suggests to me

11    that, you know, either you're so invested that you no longer

12    have clarity in it, or there's other things going on in your

13    life that are interfering with your judgment.

14         But I'm -- I'm somewhat speechless at your apparent

15    lack of recognition of what you're suggesting you do in

16    helping her, to not realize how incredibly harmful it is.  I

17    mean, as I go here, if I have a lawyer who is whispering

18    behind their mask to their client, even if what she said was

19    the truth, how do I look at every pleading and every paper

20    without a huge question mark?

21         MR. ROSIN:  Your Honor, and I think that when I

22    said that I have talked to substitute counsel, I was -- that

23    was what I intended to indicate, is that I do realize that my

24    being wrapped up in her case emotionally is not the best

25    thing for her.  And I do realize that, Your Honor.

1          THE COURT:  So why -- is there any reason, from

2     your point of view -- and I will then let your opposing

3     counsel address this -- that the appropriate remedy here

4     would be an order directing you to withdraw from this case

5     and making a referral to the Bar to determine what's going on

6     here?

7          Because if there are other matters, I certainly

8     don't want to be doing this in a public court proceeding.  If

9     there are other matters that are going on that are affecting

10    you individually, this is of concern.  But so I have you

11    withdraw from this.  I make the referral there.

12         And then, with regard to your client, allow that to

13    the extent, just like you can cross-examine someone with

14    their deposition, the plaintiffs will be able to play those

15    portions of the tape if they want to use that to suggest at

16    trial that her -- to challenge her credibility?  Why wouldn't

17    that be the appropriate remedy here?

18         MR. ROSIN:  Your Honor, I'd be prepared to accept

19    that if that is Your Honor's view of the appropriate remedy.

20    I do care for this client.  I do think and believe in her

21    case.  I know that there is a lot of trust in me.

22         I know that I have tainted Your Honor's view of

23    that situation, and I think that I would definitely accept

24    whatever Your Honor views as appropriate, and my clients

25    would learn to move on from that.  They had a lawyer in this

1    matter before me, and that is the lawyer that I'm speaking

2    with and his firm about replacing me already.

3                 THE COURT:  Let me hear from plaintiffs.

4                 MR. HOMANS:  Your Honor, thank you.

5                 It's obviously not a pleasant situation for any of

6    us to be here.  And I certainly, in my 26 years of practice,

7    have never seen anything that comes close.  And like you,

8    I'm -- I was speechless when I found out the level that this

9    occurred.

10                And I do want to note, you know, Mr. Rosin is an

11   aggressive litigator; but he has been calm, cool, and

12   calculated throughout this.  He has not been an emotional

13   litigant -- or, you know, counsel.

14                You know, I specifically asked him during the

15   deposition, and I think it's at page 16 of the original

16   transcript, you know, "Please don't confer with your client

17   during the break, you know, as to the substance of her

18   testimony."  And he agreed, of course not.  He'll have no

19   problem with that.

20                He knows the rules.  He's practiced 25 years.  He's

21   the managing partner of the Boston office of his 140-lawyer

22   firm.  And like you, I don't understand what happened here,

23   but there can be no mistake that this was wrong and that this

24   violated multiple rules and requirements.

25                With regard to -- if there is any dispute as to the

1    substance, I agree with Your Honor.  You have two records.

2    You have the actual video recording, which I think is the

3    best evidence.  And while I regret that Your Honor or your

4    staff may have to review that video recording, you know, we

5    have pinpointed the spots, and I do think that is a better

6    record than the transcript that was produced, you know, with

7    all respect to the independent transcriptionist.

8         THE COURT:  Yes.  Recommendation for any similar

9    attempts, what people do outside of the legal profession

10    doesn't measure up to the accuracy of our certified

11    reporters.  And I regret not directing you to use a court

12    certified reporter rather than -- I mean, I don't know

13    whether this came off of, you know, a computer program for

14    however -- for however it was done.

15         MR. HOMANS:  Your Honor, yeah.  We don't know.  We

16    left it to the two court reporting services, and they

17    mutually agreed.  I think, actually, Mr. Rosin's court

18    reporter suggested this one, and the court reporter service

19    we used looked at them and said, yeah, they looked qualified.

20    And we understand they did understand what they're doing, but

21    I think they also sensed an urgency, and they have not

22    produced the best work product.

23         THE COURT:  I think the -- I think the issue that I

24    do need you to address is that the question of sanctions as

25    to the plaintiff -- sorry -- as to the defendant personally,

1    removing her case, judgment, et cetera, it seems to me

2    detracts and minimizes the problem here, which is the conduct

3    of counsel and that, while the witness was complicit,

4    obviously, she is also represented by counsel who is in a

5    sense telling her what to do.

6              And so it seems to me that the -- to sanction her

7    beyond removing her lawyer and allowing you to use the video

8    as to those portions if it came up at trial, it would seem

9    that any greater sanction as to her would require me to go

10   into findings as to the underlying allegations that both

11   sides are throwing back and forth, that -- I don't think this

12   is the appropriate forum to do.

13             MR. HOMANS:  Your Honor, I understand that

14   position.  I guess I would say, as we try to highlight in the

15   motion and memorandum of law, there have been repeated

16   incidents of, you know -- I think, cannot be concluded to be

17   anything other than willful dishonesty and willful wrongful

18   conduct by Elizabeth Hockmeyer Williams.  They're documented,

19   and they can be demonstrated.

20             And then when she's confronted with those, you

21   know, documented incidents, she either -- "I don't recall,"

22   you know, either just totally claims no knowledge as to who

23   she sent, you know, this May 12th e-mail to about what -- you

24   know, on May 12th, the day she sends the e-mail to all

25   Barksdale's customers, she and her husband are texting back

1    and forth, "I'm downloading everything.  I've downloaded all

2    your stuff.  I'm downloading all my stuff.  Next we'll spend

3    all week downloading other stuff," you know, from Barksdale's

4    systems.

5              THE COURT:  So I understand that you feel strongly

6    about the -- that the facts here support your side.  I'm

7    uncomfortable with both sides asking me to delve into those

8    facts in this context.  I mean, what I'm -- what I am

9    addressing here on this motion is what happened during this

10   deposition.

11             And it's a question of the context and the forum.

12   If -- you know, is it more expensive to proceed and have

13   factual determinations determined at the appropriate time

14   under the Rules of Civil Procedure?  Absolutely.  But is this

15   a shortcut to get there?  I don't -- I don't think that

16   presents -- I think the question that's presented here is the

17   question of what happened on that day.

18             MR. HOMANS:  And I guess the only other things I'll

19   note on that, Your Honor -- you know, there is this

20   representation now that she was highly fragile and in an

21   emotional state.  She was -- she was pugnacious and, you

22   know, said, "I can go all day," during the deposition.  She

23   would say -- you know, she would laugh if she thought I asked

24   an awkward question.

25             She -- she states, on the mask -- I asked that the

1     mask be removed.  She said, "Well, I'm high risk."  You know,

2     she drives into Boston, sits in a conference with two other

3     people all day for the deposition, you know, close by.  She's

4     just back from a vacation to Florida for a week.

5              So, you know, I think all of this suggests to me

6     willful misconduct, a willful scheme to wear the mask to

7     cover up so that Mr. Rosin can feed her lines when she's

8     stuck or she needs help.  And I think that's what happened.

9              And we cited cases, I believe, at pages 11 and 14

10    in which the sanction of dismissal does occur when there is

11    evidence that the party is complicit in the wrongdoing, which

12    I think there is evidence here, that that -- the entire claim

13    can be dismissed and that party should be sanctioned also.

14              I understand.  I hear you, Your Honor.  I mean, if

15    your counsel is suggesting you do this, that's a high burden

16    to place on a party, you know, who -- she's not just a

17    photographer.  I mean, she was -- she was operating officer

18    of this business for the past 15 years.

19              But I understand the position, and I just think

20    there is possibly consideration to be made that sanctions

21    should be against her, you know, and we can talk about

22    various levels of sanctions, what they should be and whether

23    they should be full dismissal.  But I don't think she's an

24    innocent party here, I guess, is my point.

25              THE COURT:  Mr. Rosin, do you want to address the

1    issue of whose idea it was to have communications behind your

2    masks --

3                 MR. ROSIN:  Your Honor --

4                 THE COURT:  -- to keep your masks on during the

5    proceeding, to be in one room during the deposition?

6                 I -- you know, I have to say, I think part of what

7    was so distressing about this motion -- and, again, your --

8    the fact that you're -- you know, you've built a respected

9    practice is all the more troubling here -- is that we're all

10   working through this pandemic.  There's a lot of problems,

11   and how do we do this?  You can see in this courtroom.  We're

12   all making all kinds of efforts to deal with this.

13                And the idea that this deposition format, instead

14   of being, "How do we make our way through during a pandemic

15   to keep justice going," became an opportunity that you would

16   never have tried to do in -- sitting in the same room or here

17   in the courtroom.  And imagine she's there.  It will be very,

18   very stressful.  You would never have thought, here, to be

19   whispering her answers or even to be muttering under your

20   breath.

21                MR. ROSIN:  And I think, Your Honor, I put in my

22   opposition that there's nothing premeditated.  It just

23   happened that, you know, in the course of the -- what I saw

24   as a very abusive line of questioning and repetitive

25   questions that, you know, the agitation and the arguing, and

1    they keep coming back to the same issue and asking it again

2    and asking it in a different way and asking it in another way

3    now, that there were moments of frustration when I -- you

4    know, "Just say you don't know.  You know, just -- can we get

5    on with this," you know?

6                THE COURT:  But you're an experienced attorney, and

7    you knew I was here in the courthouse that day, right?

8                MR. ROSIN:  I know, Your Honor.  I know.  And I

9    wish that I had moved for a protective order and called

10   Your Honor a number of times.  In the moment, I was weighing

11   needing to get through the day and do it in one day and

12   really that being the priority.

13               And, you know -- and there were times -- and it's

14   after the third hour -- where I'm objecting while I'm still

15   on mute.  It's a clear objection.  And I know that my voice

16   is being heard through Ms. Williams's microphone, because

17   every time I went off mute to object, there was that tin-like

18   echo in the room.

19               And I'm not IT.  My one officer manager that's in

20   there with me and my one contract lawyer who is in her office

21   in the other room, none of us are IT.  We just know that for

22   some reason, every time I go off mute, the whole thing

23   echoes.  And so it just sort of happened after the

24   frustrations of the day.

25               THE COURT:  Was this the first deposition of this

1    case?

2              MR. ROSIN:  It was, Your Honor.  And it -- the

3    first time I've ever done one live in my office during the

4    COVID era on Zoom with the witness in the room.  I've never

5    even had a witness in the other room.

6              THE COURT:  And you have how large an office?  Has

7    anyone else handled depositions?  I mean, I'm just

8    speechless, because we have been on Zoom since last March.

9              MR. ROSIN:  Well, we've always --

10             THE COURT:  And, you know, we are dealing with

11   these issues with individuals in a lot of different settings.

12   We've done our criminal proceedings.  I'm somewhat speech- --

13   so, I mean, your defense here is you had no idea this is how

14   to do a deposition?

15             MR. ROSIN:  No, Your Honor.  I think there have

16   been times where every lawyer is in their individual room and

17   there's not the sound issue.

18             THE COURT:  Right.

19             MR. ROSIN:  This client specifically said, "I want

20   you in there with me.  I need you in there with me.  I can't

21   do this alone."  Okay?

22             So I think that I -- "Okay.  I'll be in there with

23   you," but then there was this sound issue.  And I thought,

24   "Okay.  I don't have to say anything other than the

25   occasional object."  Then as I watched my --

1          THE COURT:  How can you do a deposition and not --

2     I mean, you're telling me now these questions were compound,

3     et cetera, but you made no objection during the time; or when

4     you tried to object quietly, it clearly wasn't being picked

5     up by the court reporter, so you knew that.

6          MR. ROSIN:  Well, no, there was a time I knew that

7     my objections were being heard through her microphone.  And

8     so that was at the third hour, right around 3:08.  And so,

9     like, it just happened, Judge, and it just -- it's a bad

10    consequence, a bad confluence of events.  I own my

11    responsibility in it.

12          And it was not any kind of setup or anything like

13    that to try to, you know, do something untoward.  It was just

14    the stresses of the day, the situation we were in, the

15    repetitive questioning, the need to get through the day.

16    Ultimately what we weighed was whatever happens in the next

17    seven hours -- and that's all he has, is seven -- whatever

18    happens, we're going to endure it.  And in that mix,

19    Your Honor, there were some mistakes, and we -- that's all I

20    can say.

21          THE COURT:  Okay.  I will go back and make sure at

22    least some of the key things I have listened to on the video.

23    I have, so far, stuck to the transcripts.

24          But my intention here, the order I anticipate

25    issuing will require you to withdraw.  And there needs to be

1    substitute counsel appearing promptly or at least as to the

2    entity.  Ms. Hockmeyer, obviously -- or Ms. Williams,

3    obviously, has a right to appear pro se if she isn't able to

4    find substitute counsel.  But I am going to -- I will need

5    there to be substitute counsel for E-lluminations because

6    they cannot appear pro se.

7             Do you anticipate that substitute counsel will, in

8    fact, be filing an appearance and I don't need to worry about

9    this or --

10            MR. ROSIN:  Your Honor, I will place a phone call

11    as soon as we leave the court.  It is someone I have spoken

12    to already, and I know that they said they're willing.

13    They're in.  Obviously, Ms. Williams needs to re-meet that

14    person and be agreeable to, and E-lluminations.

15            Your Honor, there is a sister case, brother case.

16    It's Mr. Williams', Jeffrey Williams' case before Your Honor.

17    I would ask that I be permitted to continue on his case.

18            THE COURT:  I don't see how.  The discovery was

19    consolidated in this case, correct?  I understand this motion

20    was only filed here, but this was consolidated discovery.

21    Her deposition factors into that case as well, correct?

22            I also -- I mean, literally -- I am -- I am

23    actually -- I maybe should say this even in stronger terms.

24    You are not helping your clients here by your conduct.  This

25    is a terrible situation that somebody has to deal with

1    professionally after you've gone down this thing.

2         I don't know what -- how much of your clients'

3    medical and marital information was on the public record

4    before you filed your oppositions to these motions, but

5    you've put it all out there now.

6         I don't think that there is any scenario where it

7    is appropriate -- I think there's a conflict of interest

8    here.  I think you need to figuring out how to take steps so

9    this doesn't have repercussions far beyond this case, because

10    I will be making a referral to the Bar.  I can't not.  This

11    is so -- so entirely inappropriate.

12         So you're going to -- I think what I will do is,

13    just to ensure that we don't have a complete mess on getting

14    notice out to your client, I will direct you to withdraw from

15    this case but give you a week to do so.  And hopefully

16    substitute counsel will file a notice of appearance in the

17    meantime.

18         I will make a referral to the Bar and have them

19    address what happened here or not.  I really -- I think

20    that's probably the appropriate place, and I do -- I do have

21    concern that this doesn't -- this seems to be a type of thing

22    sort of beyond what someone would normally do to protect

23    their clients along the way, and to not understand that the

24    most important thing isn't getting through a seven-hour

25    deposition suggests you may not have been in an appropriate

1    frame of mind as you were -- as you were considering this.

2          And as I said, I intend to order the video -- that

3    the video deposition portions may be used as appropriate for

4    that particular question, if it comes up, just the way you

5    could use a conflicting answer in a deposition.  So, in that

6    sense, it would be available for impeachment.

7          And I don't -- I don't want to create a second

8    fight about fees, but I will entertain a reasonable request

9    for the defendants' [sic] fees in bringing this motion.  So

10   I'll go back and take one last look at the video, but that's

11   my plan here.

12          There are pending -- there is a pending close of

13   discovery and appending motion to compel, and I am not

14   prepared to address the merits of it.  But just so I

15   understand what is open with regard to discovery in this

16   transition, but for these matters that are at issue in the

17   motion to compel, is discovery complete?

18          MR. ROSIN:  Your Honor, we had planned, if we

19   stayed in the case, a few other depositions.  And one of our

20   requests in the motion to compel was for the continued

21   depositions, that we claim we should have had certain

22   documents.

23          THE COURT:  So I understand that there's a motion

24   that says there are documents and continued depositions.  I

25   understand that.  So putting that to the side, are there

1  other discovery and depositions that are still open?

2          MR. ROSIN:  There were two that Ms. Williams

3  wanted.  They are the -- names are Mo Ehtesham and Brad Ells.

4          THE COURT:  And have those been noticed?

5          MR. ROSIN:  One of them was, but we voluntarily

6  took it off calendar because there are documents that we had

7  wanted.  Mr. Ells -- we hadn't had a date yet, but we wanted

8  the same set of documents for Mr. Ells.  And then we had

9  contemplated a Rule 30(b)(6) to get into some of the alleged

10  lost revenues.

11          THE COURT:  And has that been noticed or discussed

12  with opposing counsel?

13          MR. ROSIN:  It's been referenced, but not noticed

14  or discussed.  The two -- the first two have been discussed

15  that -- the 30(b)(6) has been referenced, but not discussed.

16          MR. HOMANS:  And, Your Honor, I think we referenced

17  in our motion, our response to the motion to compel, that we,

18  you know, kind of request, as part of this motion for

19  sanctions, a stay of discovery while this was worked out

20  because I did understand this might put a lot of things in

21  flux.

22          There are some key documents we would move to

23  compel and also probably taking two to four depositions,

24  which have not been noticed yet.

25          THE COURT:  Okay.  So I am going to stay discovery.

1    I would like -- because I don't want to have new counsel come

2    in and have a request to reopen the whole -- the whole

3    discovery matter.  Where I understood we were is that you

4    came in -- prior to this, these two motions, what I

5    understood was that there was a motion to extend discovery by

6    one month based on the need to do additional depositions.

7         Is that -- is that correct that that was the basis,

8    was that there was -- that you asked to extend the time to

9    complete depositions or to take depositions?

10         MR. HOMANS:  Yes, Your Honor.

11         THE COURT:  Okay.  So written discovery, except as

12    may be subject to a motion as -- except as may come forward

13    in a motion to compel, is closed.  And then with regard to

14    any further depositions in addition, I understand there's a

15    group that defendant contends needs to be reopened, and

16    that's briefed, and I will look at that.

17         But other than those matters, I'd like you to

18    confer and file a joint statement as to whether there's an

19    agreement on depositions that need to go forward.  And if

20    there is not agreement, if there are additional people that

21    there's any dispute about, or the 30(b)(6), if there's any

22    dispute about it, a brief statement as to why notice for

23    deposition of those people would be appropriate at this time

24    so that I know -- so I have a concrete universe of what we're

25    dealing with before we bring new counsel in.

1          MR. ROSIN:  Thank you, Your Honor.

2          I was going to ask for two weeks instead of one

3     only because -- just to get new counsel up to speed.  But I

4     would defer, Your Honor, if one week is all you'll give me.

5          THE COURT:  Well, what I'm -- what I don't -- you

6     know, any time a new attorney puts their eyes on something,

7     no matter how excellent a job you've done, they may well say,

8     "Well, if it was me, I would have asked for something

9     different."  I don't want to go down that road.  We've had

10    discovery.  Competent counsel have worked on this case, and

11    you sort of have the universe.

12         So written discovery is closed other than you have

13    a pending motion and plaintiffs are intending to file a

14    motion to compel.  So written discovery is closed.

15         With regard to the depositions, I suppose two weeks

16    is fine, but I'm not looking for new names, right?  What I'm

17    looking for is the parties came together and said, "Let's get

18    an extra month."  It wasn't really so that everyone could go

19    back and say, "Let's come up with a list of ten new witnesses

20    to depose."

21         So I'll give you the two weeks, but I am -- I am

22    hoping that the parties have an understanding of who the

23    witnesses generally are here and that this isn't going to be

24    a disputed matter.

25         MR. ROSIN:  Thank you, Your Honor.

```
 1                THE COURT:  Okay.  Anything else?

 2                MR. ROSIN:  No, Your Honor.  Thank you.

 3                THE COURT:  Oh.  And if you are going to make a

 4     request for reasonable fees, you should probably do that in

 5     somewhat short order so that Mr. Rosin has a chance to

 6     respond, and you should confer with each other in advance.

 7     And, again, I'm not looking here to have one side try to get

 8     blood from the other side.  I'm looking for a reasonable

 9     resolution of this matter.

10                MR. ROSIN:  Thank you, Your Honor.

11                THE COURT:  We're in recess.

12                (Case in recess at 10:41 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4        I, Robert W. Paschal, Registered Merit Reporter and

5   Certified Realtime Reporter, in and for the United States

6   District Court for the District of Massachusetts, do hereby

7   certify that pursuant to Section 753, Title 28, United States

8   Code, the foregoing pages are a true and correct transcript

9   of the stenographically reported proceedings held in the

10  above-entitled matter and that the transcript page format is

11  in conformance with the regulations of the Judicial

12  Conference of the United States.

13

14        Dated this 23rd day of

15  September, 2021.

16

17

18

19

20        /s/ Robert W. Paschal

21        _____

          ROBERT W. PASCHAL, RMR, CRR
22        Official Court Reporter

23

24

25